MINNEAPOLIS & ST. CLOUD RAILROAD COMPANY *vs.* DULUTH & WINNIPEG RAILROAD COMPANY, Defendant, and DULUTH & IRON RANGE RAILROAD COMPANY, Intervenor.

### December 17, 1890.

Swamp-Land Grant—Condition Subsequent—Forfeiture.—The grant of swamp lands to the intervenor by Sp. Laws 1875, c. 54, was a grant *in præsenti* upon conditions *subsequent.* Such a grant is not forfeited by a mere breach of the conditions, but only by some affirmative action on part of the state after the breach, declaring or asserting the forfeiture on account of the breach.

Same—Condition Precedent.—Sp. Laws 1878, c. 246, transferring this grant to the defendant "in case of forfeiture by said Duluth & Iron Range Railroad Company" was a grant upon a condition *precedent,* to wit, that the former grantee shall be divested of the grant, and the same become reinvested in the state, because of a breach of its conditions.

Same—Forfeiture Incurred but not Enforced.—Hence, although the intervenor defaulted, yet, it never having been divested of the grant by any declaration or assertion of forfeiture by the state, the condition precedent to defendant's grant has never been performed or fulfilled, and consequently the grant has never taken effect.

Same—Successive Grantees of Lands to be Selected.—Sp. Laws 1869, c. 56, although in form an amendment to Sp. Laws 1865, c. 3, is in itself a complete act, making a "float" grant to the plaintiff in aid of its "Hinckley" branch of 10 sections to the mile without any limitation as to the locality where the lands shall be selected.   But the right of selection, not being given to the plaintiff, belongs to the state, which may fill the grant out of any of its swamp lands.   Notwithstanding the grant to plaintiff the state had a right to grant any of its swamp lands to any one else, provided only that it retained enough to fill plaintiff's grant.

Same—Limitation of Area for Selection.—The grant to intervenor is also a "float" grant, but the right of selection is given to the grantee, but limited to the three counties of St. Louis, Cook, and Lake.

Same—Construction of Proviso.—The provision in this grant "that no lands shall accrue to the said company under this act, until all grants of swamp lands previously made shall be fully satisfied," was not intended to postpone the appropriation of any land to intervenor's grant, until all prior grants had been actually filled by the selection of specific lands to

their full amounts, but merely to provide that in case there were not enough lands to fill all the grants, including intervenor's, the prior grantees should have their full amounts, and intervenor stand the shortage.

**Same—Prior Selection under Junior Grant.**—There not being enough swamp lands in the three counties named to fill intervenor's grant, and there being enough outside these counties to fill plaintiff's grant, the state had no right to appropriate to the latter lands in these counties, at least after intervenor's grant had, by selection, attached specifically to such lands.

Separate appeals by the plaintiff and the defendant from a judgment of the district court for St. Louis county, where the action was tried by *Stearns* and *Ensign*, JJ.

*M. D. Grover* and *Geo. B. Young*, for plaintiff.

*Warner, Richardson & Lawrence*, for defendant.

*Davis, Kellogg & Severance, Draper & Davis, Horace G. Stone*, and *J. H. Chandler*, for intervenor.

MITCHELL, J.   This is a contest between three rival claimants to a 40-acre tract of swamp land, situated in *St. Louis* county, and within the *Duluth* land district, each holding a deed from the governor of the state, and each claiming title under a legislative grant of swamp lands in aid of its road.   The land is more than 10 miles from intervenor's road.   No part of plaintiff's road is within St. Louis county, or within the Duluth land district.   Intervenor's road is wholly within the counties of St. Louis and Lake.   The dates (all in 1889) of selection by, and conveyance to, the respective parties are as follows:   January 8th, deed to defendant; January 14th, selection by intervenor; May 2d, selection by plaintiff; June 1st, deed to plaintiff; December 20th, deed to intervenor.   The plaintiff claims under the act of March 5, 1869, (Sp. Laws 1869, *c.* 56,) amending the act of February 11, 1865, (Sp. Laws 1865, *c.* 3.)   The intervenor claims under the act of March 9, 1875, (Sp. Laws 1875, *c.* 54,) which was amended by the acts of February 17, 1876, (Sp. Laws 1876, *c.* 241;) March 6, 1883, (Sp. Laws 1883, *c.* 69;) and of March 10, 1885, (Sp. Laws 1885, *c.* 87.)   The defendant claims under this same act of March 9, 1875, (Sp. Laws 1875, *c.* 54,) and the act of March 9, 1878, (Sp. Laws 1878, *c.* 246).   All issues of fact are determined by the

findings, so that the case turns upon questions of law arising on these various legislative acts.

1. Defendant's contention is that the grant to the intervenor, by the act of March 9, 1875, was transferred to itself by the act of March 9, 1878. The act of 1878 is entitled "An act to transfer the lands granted to the Duluth & Iron Range Railroad Company, and for other purposes." It provides that "the lands granted to the Duluth & Iron Range Railroad Company, by the act of March 9, 1875, * * * *in case of forfeiture by the said Duluth & Iron Range Railroad Company,* be and the same are hereby transferred and vested in the Duluth & Winnipeg Railroad Company." This is clearly a grant upon a condition *precedent,* to wit, the forfeiture of the grant by the former grantee. By reference to the act of March 9, 1875, it will be seen that the grant to the intervenor is what is familiarly known as a grant "*in præsenti,* upon conditions *subsequent.*" It is elementary law that such a grant is not forfeited by mere default of the grantee in the conditions, but only by some affirmative act of the state, after the breach or default, declaring or asserting the forfeiture. The right of the state to a forfeiture must be asserted by judicial proceedings, the equivalent of an inquest of office at common law, finding the fact of forfeiture, and adjudging a restoration of the estate on that ground; or there must be some legislative assertion of ownership of the property for the breach of the condition; and until this is done the grant remains vested in the grantee, notwithstanding the breach of the condition. Moreover, if, after the breach, the grantee proceeds and earns the grant by the construction of its road, before any action on part of the state asserting or declaring a forfeiture, the state cannot afterwards divest the grantee of the land by declaring a forfeiture. These propositions, as applied to land grants, have become so familiar, especially since the decision in *Schulenberg* v. *Harriman,* 21 Wall. 44, that a discussion of them, or a citation of authorities in their support, would be worse than useless. The intervenor was not in default in any of the conditions of its grant in March, 1878, or for nearly a year afterwards. In 1879, it did default, not having, as the court finds, located its line, or filed a map of it, until the spring of 1882. But the state has never declared or

asserted any forfeiture, either by legislative act or by judicial proceedings, and in the mean time the intervenor has gone on and earned its grant by the construction of its road, so that it is now beyond the power of the state to declare a forfeiture.   It is not, and cannot be, claimed that the act of 1878 amounted to a legislative declaration of forfeiture, because, at the time of its passage, there had been no default or breach on part of the intervenor.   It follows that the grant of 1875 has never been forfeited, but is still vested in the intervenor.

It would seem to necessarily follow, as a corollary from this, that the condition precedent to the grant to defendant has never been performed or fulfilled, and hence that the grant has never taken effect.   But defendant contends that the word "forfeiture" is used in the act of 1878 merely in the sense of a default or breach of condition which would be a ground for a forfeiture; in other words, rendered the grant subject to a forfeiture, and hence, on the mere default of intervenor, the grant to itself took effect.   The word "forfeiture" is, no doubt, frequently used in the sense suggested, but it could not have been used in any such sense here.   Clearly the legislature never intended that there should be two vested co-existent grants, — one in the intervenor, and another in the defendant, — which would be the case here, if defendant's contention is correct. It cannot be seriously claimed that the act made a new grant, distinct from and independent of the one previously made to the intervenor.   Counsel conceded on the argument that, if there had been no "forfeiture" by intervenor, the grant to the defendant would not have taken effect.   Indeed this concession was unavoidable, for, if the act of 1878 made a new and independent grant, no such subject is expressed in the title.   What the legislature intended, and all they intended, was that, if the intervenor should be divested of its grant because of a breach of its conditions, then it should go to the defendant.   The language of the act must be construed with reference to the rule of law that the grant would not revert to the state, so as to be capable of being transferred by it to another, without a declaration or assertion of the right of forfeiture on part of the state.   Counsel suggests that, under this view, the grant to defendant would

amount to very little, being in effect a grant at the option of the state to declare a forfeiture, if it saw fit. This may be true. But the answer is that this is all the defendant got from the state, and the courts cannot enlarge it into something greater. Counsel also urges that the case is different from what it would have been if intervenor's grant had, at the date of the passage of the act of 1878, acquired precision, and had attached to specific lands, instead of being, as it then was, a mere float. But we cannot see how this has the slightest bearing upon the case. Our conclusion is that, the condition precedent never having been performed, the grant to defendant never took effect; hence the deed to it is absolutely void, having no legislative grant to rest on.

2. This brings us to the consideration of the respective claims of the plaintiff and intervenor. Each concedes that the other has a valid grant, and has complied with its terms. It becomes necessary, therefore, to ascertain the extent and nature of these two grants. It will be observed that the first grant to plaintiff was by the act of February 11, 1865, and that the act of March 5, 1869, under which it now claims, is in the form of an amendment to, or substitute for, section 1 of the act of 1865. And the first question to be determined is whether the provisions of sections 3 and 4 of the act of 1865 are, as intervenor claims, applicable to the act of 1869; for, if they are, then plaintiff has no right to any land in St. Louis county or in the Duluth land district. Our opinion is that the act of 1869, although in form an amendment of section 1 of the act of 1865, is, in itself, a complete act, fully covering the subject to which it relates,—the grant to what we may call the "Hinckley branch,"—and that it expresses and contains every condition and limitation to which that grant is subject; and hence that the provisions of sections 3 and 4 of the act of 1865 are not applicable to it. It would require the analysis and entire comparison of the two acts to explain fully all the considerations which have led us to this conclusion, but we will only suggest a few of them. The act of 1865, it will be observed, contains two grants,—that in section 1 to the "Hinckley branch," and that in section 2 to what may be called the "Mankato branch." The act of 1869 applies only to the first grant, the second being left unchanged.

Now, in section 1 of the act of 1865, which is really the granting part of the act, the grant is limited to odd-numbered sections, and to lands lying in the counties through which the road may run. These are all omitted in the act of 1869. In the act of 1865, the grant to the Hinckley branch in section 1, like that to the Mankato branch in section 2, is made "upon the terms and conditions hereinafter specified;" *i. e.*, in sections 3 and 4. In the act of 1869, this is conspicuously absent. Again, the act of 1869 contains a proviso expressly postponing the grant to prior ones, similar to one found in section 4 of the act of 1865, a wholly useless repetition, if the provisions of section 4 were intended to remain applicable to the later act. Further, if the other provisions of sections 3 and 4 are to be imported into the act of 1869, there is no reason why the restriction of the grant to odd-numbered sections should not also apply. This would seem manifestly contrary to the plain purpose and intent of the act. Again, under sections 3 and 4 plaintiff could only go outside the counties through which its road runs, in case four sections to the mile could not be gotten in those counties. The result would be that if four sections, and only four, were obtained in these counties, then, if the provisions of sections 3 and 4 are applicable, the plaintiff could not go outside to obtain the other 6, and thus the grant of 10 sections to the mile would be defeated. It is suggested that the provisions of sections 3 and 4 may be considered as amended by the act of 1869, so as to conform to its provisions, and, as thus amended, be still applicable. But these sections must be retained in their original condition, because they are still applicable to section 2,—the grant to the Mankato branch. Hence, if the suggestion referred to be adopted, it would result in the anomalous situation of having sections 3 and 4 at one and the same time in an amended form, as applied to the act of 1869, and also in their original form, as applied to section 2 of the act of 1865. The continued existence of section 2, and the consequent need of preserving sections 3 and 4, may explain why they were not expressly repealed by the act of 1869.

Our conclusion is that the provisions of these sections are not applicable to the act of 1869; that that act is a grant of 10 sections to the mile out of any swamp lands then belonging to, or that might

thereafter belong to, the state, without any limitations or restrictions as to sections or locality. Such a grant, being one of a certain quantity out of a larger quantity of land, is what is termed in land-grant law a "float." It will be observed that the act is silent as to who shall make the selection of the land. There are two rules of law applicable to such a grant that have an important bearing on the result in this case. The first is that the right of selecting the lands to fill the grant, not being given to the grantee, belongs to the state. It can, so far as plaintiff's rights are concerned, fill the grant out of any swamp lands in the state. The second is that such a grant does not tie up all the swamp lands in the state, until the grant is actually filled. Notwithstanding the grant to plaintiff, the state could still dispose of any of its swamp lands, and give perfect title to them, *provided* only that it retained enough to fill plaintiff's grant. *U. S.* v. *McLaughlin,* 127 U. S. 428, (8 Sup. Ct. Rep. 1177.)

We turn now to the grant to intervenor. It does not claim anything (and it is not necessary that it should) under the act of March 10, 1885, which was enacted after the adoption of the constitutional amendment of 1881, relating to the disposition of swamp lands. It rests its claim wholly on the original grant of 1875. This was a present grant of 10 sections to the mile, "*to be selected within 10 miles on each side of the road,*" and, if there should not be enough swamp lands unsold and unappropriated within each 10-mile section of the road as completed, then the intervenor had "the privilege of locating the deficiency on any of the swamp lands belonging to or to accrue to the state, not otherwise previously disposed of, *within the counties of St. Louis, Lake, and Cook, and no other counties in the state.*" Properly speaking, there is no such thing in this grant as "place lands" and "indemnity lands," as is the case in most congressional land grants. In all cases, whether the land selected be within or without the "ten-mile limit," it is the *selection* and not the *location* of the road by which the grant attaches to specific lands. In the first instance, the selections are to be limited to a certain district, and, if the lands in this district are all exhausted before the grant is filled, then the remaining selections may be made out of a larger district; but, wherever selected, all the lands are of the same class, precisely

as in the case of plaintiff's grant. Both grants are "floats," the only differences between them being that in the one the right of selection is given to the grantee, while in the other it belongs to the grantor, and in the one the selections may be made anywhere in the state, while in the other they are to be limited, in any event, to three counties.

The court finds that the intervenor has selected all the swamp lands within 10 miles of its road, and that there are not enough swamp lands belonging to the state, including the tract in suit, in the counties of St. Louis, Cook, and Lake, to fill its grant. It also finds that there are, and always have been, since plaintiff completed its road, more than enough swamp lands to fill its grant, belonging to the state, within the counties through which its road runs; and *a fortiori* there must be more than enough in the state outside the counties of St. Louis, Cook, and Lake.

The application of the principles already announced to this state of facts makes the decision of the case very simple. The state, notwithstanding its prior grant to plaintiff, had a right, if it chose, to grant to intervenor all its swamp lands in the three counties named, inasmuch as it had enough left elsewhere to fill plaintiff's grant. This is, in effect, what the state did do by making this float grant to an amount as great or greater than all the swamp lands it owned in those counties. On the one hand plaintiff would have had the right, in case there had not been enough swamp land elsewhere to fill its grant, to insist that intervenor should not appropriate to its grant all the lands in these three counties, to the diminution of plaintiff's prior grant; and on the other hand intervenor has a right to insist that the state shall not, to the diminution of its grant, appropriate to plaintiff's grant swamp lands in these three counties, inasmuch as there are enough elsewhere to fill it. The adjustment of the two grants, and the marshalling of the lands between the two grantees according to these principles, would fully protect the legal rights of both parties, and carry into effect both grants, as far as it is possible to do so. Whether the state would have had the *power* to convey the tract in suit to plaintiff had intervenor not previously selected it, is a question not necessary to be decided in this case.

It would, under the circumstances, have certainly been inequitable to have done so. But it is very clear that it could not do so, under the facts of this case, after intervenor's grant had attached to this specific land by selection.

Plaintiff's counsel, however, lay much stress upon the fact that the act under which intervenor claims, provides "that no lands shall enure to the said company under this act until all grants of swamp lands previously made by the state shall be fully satisfied." It is contended that this postpones the appropriation of any lands to this grant until all prior grants have been actually filled by the selection of specific lands to their full amount. If this was so, intervenor could not get an acre until plaintiff's grant is finally adjusted and filled, although this might occupy years, and notwithstanding that during all this time it is absolutely certain that there is more than land enough to fill both grants. We do not think that a result so unreasonable as well as unnecessary was ever intended. We think that all the statute means is that, if there is not enough swamp land to satisfy all prior grants and this one too, the prior grantees shall have their full amounts, and the intervenor must stand the shortage.

Judgment affirmed.