RUSSELL SAGE, Assignee, v. N. S. SWENSON.[1]

May 25, 1896.

Nos. 10,025—(249½).

| 64 | 517 |
|----|-----|
| d75 | 454 |

| 64 | 517 |
|----|-----|
| 83 | 318 |

| 64 | 517 |
|----|-----|
| 85 | 490 |

**Railroad Land Grant—Withdrawal from Entry.**

While a land-grant railroad company has no vested right in a mere executive withdrawal from entry and settlement of lands within either its "place" or "indemnity" limits, yet, so long as the withdrawal continues in force, the lands are not subject to entry and settlement, and no lawful settlement on them can be acquired.

**Same—Indemnity Lands.**

Facts considered, and *held*, that the land in controversy, which was within the indemnity limits of plaintiff's assignor, and was withdrawn in 1868, was never restored to entry and settlement, and that its selection by the railway company, in 1883, for indemnity purposes, was finally accepted and approved, and the land certified to the state for the benefit of the company.

Action of ejectment in the district court for Stevens county by Russell Sage, as assignee in trust of the Hastings & Dakota Railway Company, against N. S. Swenson. From a judgment in favor of plaintiff, entered in pursuance of the findings and order of C. L. Brown, J., defendant appealed. Affirmed.

*Elmer N. Morrill*, for appellant.

*Owen Morris*, for respondent.

[1] Reported in 67 N. W. 544.

MITCHELL, J. This action involved the title to 120 acres of land situated in an odd section within the "indemnity limits" of the Hastings & Dakota Railway. See act of July 4, 1866, entitled "An act making an additional grant of lands to the state of Minnesota, in alternate sections, to aid in the construction of railroads" in said state (14 Stat. 87).

The map of definite location of the line of road having been filed, the secretary of the interior, in April, 1868, withdrew from entry the odd-numbered sections within both the 10 and 20-mile "limits," as permanently established by the map of definite location. The railway company having fully completed its road, and earned the grant, and it having been ascertained that there was a deficiency of nearly 900,-000 acres of the lands "in place" within the 10-mile limits, the company, on May 26, 1883, applied to select a large quantity of lands (including the tract in controversy) within its indemnity limits, to make up this deficiency, tendering the requisite fees and full lists of lands lost within the place limits. The local land officers rejected the application, because of the alleged prior rights and then pending application of the St. Paul, Minneapolis & Manitoba Railway Company to select the same lands as indemnity under its grant. From this rejection, the Hastings & Dakota Railway Company appealed. Pending this appeal, and in May, 1890, under the railroad adjustment act of March 3, 1887,[2] the grant was adjusted, and it was ascertained that the grant was deficient for more than the entire available lands within the indemnity limits subject to the grant. This controversy as to the lands, both in the granted and indemnity limits between the two railroad companies, continued pending on appeal until October 23, 1891, when the secretary of the interior decided in favor of the Hastings & Dakota Railway Company as to lands within the primary limits, but against both companies as to their applications to select lands within the indemnity limits. The ground on which the secretary rejected the selection of the Hastings & Dakota Railway Company was that it had not "matched" or "mated" each specific tract selected against a specific tract lost, as required by the circular of the interior department issued November 7, 1879. This requirement had been exacted on the strength of some dicta in the case of Leav-

[2] 24 Stat. 556, c. 376.

enworth, L. & G. R. Co. v. U. S., 92 U. S. 733, which, however, were soon overruled on the circuit by Justices Miller and Harlan, and in March, 1885, by the supreme court of the United States, in Winona & St. P. R. Co. v. Barney, 113 U. S. 618, 5 Sup. Ct. 606.

It follows that the Hastings & Dakota Railway Company had fully complied with the law in making the selections, both the ground on which the local land officers and that on which the secretary of the interior rejected them being erroneous. Although the ruling of the secretary of the interior was clearly erroneous, yet the Hastings & Dakota Railway Company, immediately, and on October 29, 1891, made a second selection, or rather amended its previous selection, so as to meet the requirement of the secretary. This was accepted by the department, and the lands certified to the state, and by the state conveyed to the railroad company. In the meantime, and on May 28, 1891, the interior department restored to the public domain and the settlement lands theretofore withdrawn within the indemnity limits of several railroad companies, including the Hastings & Dakota Company, "not embraced in selections heretofore made or applied for by said companies." In his instructions to the local land officers, the commissioner of the general land office directed that "any rejected lists by the company pending on appeal before this office should be noted upon your records, as such lands are not included in the restoration."

The defendant, who was a qualified homesteader, entered upon the land in controversy on May 25, 1890, with the purpose of entering it as a homestead, and within 90 days thereafter made application to the land office to enter the same, which was rejected. He made a similar application in June, 1892, which was also rejected. The plaintiff claims that the ordinary rule with respect to lands within indemnity limits, that no title passes until after selection, does not apply where, as in this case, the deficiency within the granted limits is so great that all the indemnity lands will not make good the loss. The supreme court of the United States holds that this is true as between two railroad companies claiming under different grants. St. Paul & Pac. R. Co. v. Northern Pac. R. Co., 139 U. S. 1, 11 Sup. Ct. 389; United States v. Colton Marble & Lime Co., 146 U. S. 615, 13 Sup. Ct. 163. This may be because both grants are, as to indemnity

lands, mere floats until selection. Hence we are not prepared to say that the same rule would apply to the facts of the present case.

But upon another ground the decision of the court below was clearly right. While a land-grant railway company has no vested right in a mere executive withdrawal of lands for its benefit, yet the decisions both of the interior department and of the federal courts are uniform to the effect that, so long as the withdrawal continues in force, the lands are not open to settlement and entry, and no lawful settlement on them can be acquired. This land in suit was withdrawn from entry and settlement in 1868, and was expressly excepted from the order of restoration made in 1891, because it was "embraced in selections theretofore made and applied for" by the Hastings & Dakota Railway Company, and which, although rejected, were "pending on appeal." Even if the land had not been thus excepted from the order of restoration, it seems to us that the result would have been the same. The railway company's selection in 1883 was in all respects a full compliance with the law, the grounds on which it was rejected first by the local officers, and next by the secretary of the interior, being erroneous and unauthorized. The company had done all that it could do, and all that it was in law required to do, to perfect its title to the land; and it failed to attain its right solely by reason of the error or mistake of executive officers of the government. Neither was the right of the company prejudiced by its act in October, 1891, in making a second or amended selection for the purpose of conforming to an unauthorized requirement of the secretary of the interior.

Judgment affirmed.