RUSSELL SAGE v. DAVE CROWLEY.[1]

SAME v. LOUIS M. E. BUMSTAD.

SAME v. DAVID CROWLEY.

SAME v. THOMAS CROWLEY.

SAME v. OLE LOFTHUS and Others.

May 31, 1901.

Nos. 12,523, 12,524, 12,525, 12,526, 12,527—(102, 103, 104, 105, 106).

## Hastings & Dakota Land Grant.

Under Act Cong. July 4, 1866, the Hastings & Dakota Railway Company completed its railroad within the time as extended by the Minnesota state legislature. When the road was finally completed, there was found a deficiency in the primary limits of about eight hundred thousand acres, and only seventy thousand acres available in the indemnity limits to make up the loss; therefore all the lands within the indemnity limits were selected. After such completion and selection, the company's franchise was forfeited by a judgment of this court, but within the three years provided by G. S. 1894, § 3431, because of inability to otherwise dispose of its property, the company transferred it to the respondent, in trust for the benefit of its stockholders. *Held*:

1. That appellant, who entered upon a part of the lands after they had been withdrawn from settlement, and after the lands had been earned by the completion of the railroad, is not in position to attack respondent's title.

2. The acts of congress of September 29, 1890, and of the state of Minnesota, Laws 1895, c. 165, did not affect respondent's title in such lands, the same having been earned by the completion of the road.

3. The transfer of the lands to respondent in trust was a valid disposition of the lands, as provided by G. S. 1894, § 3431.

4. The complaint states a good cause of action.

Separate actions in ejectment in the district court for Stevens county by plaintiff, as assignee in trust of the Hastings & Dakota Railway Company. From separate orders, Steidl, J., overruling their several demurrers to the complaints, defendants appealed.

[1] Reported in 86 N. W. 409.

The issues raised in all the cases being the same the appeals were argued and submitted together.    Affirmed.

*Spooner & Shelley, Marshall A. Spooner* and *Thomas Kneeland,* for appellants.

*Owen Morris,* for respondent.

LEWIS, J.

These actions are brought to recover possession of certain lands within the indemnity limits of the land grant to the Hastings & Dakota Railway Company under the act of congress of July 4, 1866.

The complaint in each in substance states: That the grant was accepted by the state of Minnesota by an act approved March 7, 1867.    That the company duly surveyed and definitely located its line of railroad, and caused a map thereof to be transmitted to the governor of the state and secretary of the interior, and that the same was duly approved and filed on June 26, 1867.    That by the terms of the original grant of the act of congress the railroad was to be completed within ten years from the date thereof, but by various acts of the state legislature the time for such construction was extended to 1882, and the railroad was finally completed in 1880, and, as each ten miles was finished, the same was accepted by the governor of Minnesota, and certified by him and the secretary of the interior, in accordance with the original act; and that the entire road was completed and duly certified prior to January 1, 1881.    That portion of the railroad embracing the land in dispute was completed, accepted, and certified on January 1, 1880, and such certification and acceptance included and was all that portion of such railroad adjacent to and coterminous with the land in question; that the land described in the complaint was less than twenty and more than ten miles from the line of railroad as definitely located, and ever since May 26, 1883, has been free and clear from entry from pre-emption or homestead, and has never been sold, reserved, or otherwise appropriated, except as the rights of plaintiff and its predecessors have attached thereto. That on April 22, 1868, the United States government fully withdrew from settlement, for the benefit of such grant, all of the lands

within the twenty-mile limit, including the land in question. That on May 26, 1883, there was caused to be selected by the secretary of the interior and the Hastings & Dakota Railway Company all the lands under the grant within the indemnity limits not theretofore excepted or reserved, and that such selection amounted to less than seventy thousand acres. That over eight hundred thousand acres of the original grant within the ten-mile limit had, prior to that time, been sold, reserved, or otherwise appropriated by the United States, and that all of the lands in such indemnity limits subject to selection were insufficient to cover the losses in the primary limits. That on March 23, 1887, the railway company's franchise was forfeited, and the company dissolved, by a judgment of the supreme court of Minnesota under the statute allowing a railway three years in which to dispose of its property and wind up its affairs; but with express recognition of its right to land grants earned by the construction of a railroad. That on December 9, 1889, the company, being unable to otherwise dispose of its property and wind up its business within the three years provided by the statute, transferred all of its property to the plaintiff, in trust for the benefit of its stockholders. It is further alleged that on October 29, 1891, the company caused a reselection to be made of the lands previously selected in 1883, but without waiving any of its rights under the former selection; and the lands so reselected, including the land in question, were duly certified by the secretary of the interior in compliance with the original act of 1866, and such list duly approved by him, on March 29, 1897. It is then alleged that the plaintiff is, and ever since April 10, 1897, has been, the owner and entitled to immediate possession of the tract in controversy, and that the defendant, prior to April 10, 1897, wrongfully and unlawfully entered into, and now is in possession of, the same. This complaint is demurred to by the defendant upon four separate grounds: (1) That the complaint does not state facts sufficient to constitute a cause of action; (2) that several causes of action are improperly united; (3) that there is a defect of parties defendant; (4) that plaintiff has no legal capacity to sue.

The defendant has not specified in the demurrer in what respect

plaintiff lacks capacity to sue, nor has he discussed the second and third grounds; and they will, therefore, be deemed to have been abandoned. No objection having been made to the fourth, however, we will consider it. The claim is made by counsel for appellant that, because the railroad was not completed within the ten years prescribed by the original act of 1866, the grant never became effective as to the indemnity lands. They conceded that, so far as the primary or place lands were concerned, title passed upon the location of the route and the filing of the map thereof in the office of the secretary of the interior, but insist that, so far as the lands contained in the indemnity limits are concerned, title never could pass until selection thereof was made in the manner specified in the act, and that, no selection having been made within the ten years, no title could pass; and argue that the various acts of the state legislature extending the time for the completion of the railroad were of no effect, and did not operate to confer upon the company any power to earn the lands in the indemnity limits at any time beyond the ten years. Another point raised by them is that the act of congress passed on September 29, 1890, forfeited all of the lands within the indemnity limits for a breach of condition. The language of the act applicable is as follows:

"An act for making an additional grant of lands to the state of Minnesota in alternate sections to aid in the construction of railroads in said state, approved July 4, 1866, so far as said sections are applicable to lands embraced within the indemnity limits of said grants, be and the same are hereby repealed."

And it is also claimed that chapter 165 of the Laws of Minnesota for 1895 had the effect of forfeiting and terminating all claims of the railway company to lands within the indemnity limits.

It appears from the complaint that on or about April 22, 1868, in accordance with the original act of 1866, the odd-numbered sections within the indemnity limits were withdrawn from settlement for the benefit of the grant; that, although the ten year limitation provided by the act of 1866, expired on March 7, 1877, the legislature had extended the time until 1882; that the road was completed in 1880, and on May 26, 1883, in accordance with the terms of the grant, there were selected by the secretary of the interior

and by the railway company all of the lands in the indemnity limits not theretofore reserved; that such selection amounted to less than seventy thousand acres, and that the primary limits were deficient in the amount of eight hundred thousand acres.

It has been decided that, so long as the withdrawal of lands from entry and settlement continues in force, they are not open to settlement, and no lawful entry upon them can be acquired. Sage v. Swenson, 64 Minn. 517, 67 N. W. 544. In the absence of any legislation extending the ten-year limitation, the company would, on March 7, 1877, have forfeited all of its rights to the lands within the indemnity limits; but, as the state of Minnesota was constituted a trustee by the United States for the purpose of supervising the building of the railroad and transferring the lands to the company when earned, and as the chief purpose of the original act of 1866 was to secure for the people of the country, and particularly of the state, additional means of transportation, the grant carried with it the implied power in the state to make such reasonable extensions of time as might, under the circumstances, be necessary for the accomplishment of that purpose. The United States government never interfered with nor objected to these extensions of time granted by the state; and the state legislature, in furtherance of its purpose, as trustee, in carrying out the object of the grant, extended the time from year to year, presumably as was necessary to accomplish the ultimate desire of securing the railroad. We are therefore unable to find either lack of authority under the original grant, or lack of power in the state to make the extension of time. Whatever may have been the purpose of congress in passing the act of 1890 repealing the indemnity provisions of the original act of 1866, and whatever may have been the intent of the legislature in passing the act of 1895, it is clear that they could have no bearing upon the title of the railway company in the lands in question, for they had already been earned, the selection made, and, to all intents and purposes, the title perfected. The lands were primarily granted as a consideration to the company for the building of a railroad, which consideration was accepted and earned. Under such circumstances, not even the grantor could rescind its action, for the rights of the

parties had become established; and, if it was the object of those acts to take back the lands, it was too late to do so.

It does not appear at what particular time appellant went into possession of the lands in question. The allegation in the complaint is that prior to April 10, 1897, the appellant wrongfully and unlawfully entered into possession of the premises; but this is not an admission that he was in possession at any time prior to the completion of the road and the final selection as stated. The question arises: What right has appellant to call into question the regularity of the proceedings of the company and of the state with reference to the completion of the railroad and the selection of the lands? He was never misled thereby. When he entered upon the lands he knew they had been withdrawn from public settlement, and he was advised for what purpose. He went on with full notice of the fact that, as between himself and the United States, he could acquire no rights as a homesteader or pre-emptor, and, if there were any irregularities in regard to the selection and certification of the lands, he is not in a position to raise the question.

In principle there can be no distinction in this case between the lands within the primary limits and those within the indemnity limits. As a general rule, lands within indemnity limits must be selected to fill up the deficiency in place lands, because ordinarily a certain limited number of sections would have to be selected from a large body of lands within the indemnity limits, and a selection would be necessary in order to determine what lands were taken. But in this case, according to the allegations of the complaint, there were less than $1/_{10}$ of the necessary amount in the indemnity limits; in other words, all of the lands available for selection in the indemnity limits were required, and hence there could be no object in an individual selection. The complaint does not apprise us of the exact method of selection, but merely states that on May 26, 1883, there were caused to be selected all the lands in the indemnity limits for the benefit of the grant. It will not be presumed that the selection was irregular or illegal; but, even if there were such irregularity, appellant is not the one to raise the question, since the grantor has not seen fit to do so. In this respect the lands in the indemnity limits stand upon the same basis

as lands in the primary limits, hence the proposition asserted by respondent is applicable here, viz., that no individual can assail a title conveyed by the government on the ground that the grantee has failed to perform the conditions annexed. Schulenberg v. Harriman, 21 Wall. 44, 63; Minneapolis & St. C. R. Co. v. Duluth & W. R. Co., 45 Minn. 104, 47 N. W. 464; McCreery v. Haskell, 119 U. S. 327, 332, 7 Sup. Ct. 176; U. S. v. Winona & St. P. R. Co., 165 U. S. 463, 473, 474, 17 Sup. Ct. 368.

The complaint is attacked upon the ground that plaintiff has not the legal capacity to sue. The argument is that by the judgment of this court of date March 23, 1887, the franchises of the Hastings & Dakota Railway Company were forfeited, and that such company was dissolved, and at the expiration of three years from that date it ceased to exist for any purpose, and its stockholders ceased to be such; that the transfer by the railroad company to respondent was not a disposition and conveyance of the company's property, within the meaning of G. S. 1894, § 3431. There is nothing in this proposition. The statute recognizes the right of a company to dispose of its property for the benefit of its stockholders at any time within three years; and such disposition may be by free gift to a trustee for the benefit of the parties interested, or by an absolute sale for cash. In this case the property was conveyed to respondent in trust to sell and convey its lands and distribute the proceeds according to the respective rights of its stockholders. The only essential thing was the conveyance of the lands by the company within three years. If not conveyed within the three years, there would be no power to make any conveyance; but it is immaterial as to what method the company took in disposing of its lands. In any event, the appellant is not in a position to question the validity of respondent's title by virtue of such conveyance. This question has been decided in the case of Hanan v. Sage (C. C.) 58 Fed. 651.

Orders affirmed.