## CATHERINE M. MORRIS v. R. K. SVOR.[1]

June 28, 1912.

Nos. 17,576—(132).

**Ejectment — title without actual possession.**

The legal title of land carries with it the right of possession, and it is sufficient, under section 4073, R. L. 1905, without actual possession thereof within fifteen years, to maintain an action to recover the land from one in possession thereof without right or title.

**Land grant — selection of indemnity land.**

A deed by a railway corporation, made within three years next after it had been dissolved by the judgment of this court, in trust for the benefit of its stockholders, vested in the trustee the right to make selections of indemnity lands as fully as the corporation could have done, if it had not been dissolved.

[1] Reported in 136 N. W. 852.

**Decision sustained by findings.**

> The findings of fact sustain the conclusion of law and judgment of the trial court to the effect that the plaintiff is the owner of the land here in question and entitled to its possession by virtue of a selection thereof by such trustee as indemnity land, the approval of the Federal Land Department, and a conveyance by the trustee to the plaintiff.

After the former appeal, reported in 114 Minn. 303, 131 N. W. 324, the action was tried before Qvale, J., who made findings and ordered judgment in favor of plaintiff. From a judgment entered pursuant to the order, defendant appealed. Affirmed.

*C. A. Fosnes,* for appellant.

*Owen Morris,* for respondent.

START, C. J.

Appeal by the defendant from the judgment of the district court of the county of Chippewa adjudging that the plaintiff was the owner of the southwest quarter of section 11, in township 119, range 40 west, and that she recover possession thereof. This is the second appeal in this case. The first one was by the plaintiff from a judgment dismissing her action, which was reversed by this court. Morris v. Svor, 114 Minn. 303, 131 N. W. 324. The second trial of the case was by the court without a jury, and findings of fact and conclusions of law were made which, so far as here material, are to the effect following:

1. The land which is the subject-matter of this action is within the indemnity limits of the Hastings & Dakota Railway Company, hereafter referred to as the Railway Company, by virtue of a Federal land grant of July 4, 1866, to the state of Minnesota, for the purpose of aiding in the construction of a railroad from Hastings to the western boundary of the state. The Railway Company acquired by grant from the state the land grant so made, definitely located its line of road, and made a map thereof, which was transmitted to the Governor of Minnesota and the Secretary of the Interior, and duly approved by each of them.

2. The land grant has been administered with reference to the map of definite location. The entire line was constructed and completed in the year 1880, and was duly accepted and certified to the Secretary of the Interior prior to January 1, 1881.

3. The land here in question is not included within the place limits of the grant, but is within the indemnity limits of the line of the Railway Company. The land was withdrawn from settlement for the benefit of the grant on July 12, 1866, and by a modified order of April 22, 1868. On the twenty-sixth day of May, 1883, there existed a deficiency in the place limits of the grant, and because thereof the Railway Company, for whose benefit the grant was made, attempted to select the land in question, together with other lands within the indemnity limits of the grant, but the selection was wholly rejected.

4. On March 23, 1887, the franchise of the Railway Company was forfeited by the judgment of this court, and the corporation dissolved, subject, however, to the statutory period of three years allowed the company to wind up its affairs. December 9, 1889, the Railway Company, by its deed of trust, conveyed and assigned to Russell Sage all its property and all its rights and interest in the land in question, and all lands embraced within the land grant, in trust for the benefit of the stockholders of the company. The deed in terms gave to him the right to maintain and prosecute all actions necessary to carry out the purpose of the trust. He accepted the trust and continued to act as such trustee until his death in July, 1906. No receiver of the company was, however, at any time appointed.

5. On May 28, 1891, pursuant to instructions from the Secretary of the Interior, the Commissioner of the General Land Office directed the officers of the proper local land office that, after giving notice, they should restore to the public domain and open to settlement all the lands in the indemnity limits of the grant, "not embracing selections heretofore made and applied for by said company." The selection of May 26, 1883, of the land in question was pending on appeal until October 23, 1891.

6. After the rejection of the attempted selection of May 26, 1883, Russell Sage, the trustee under the trust deed, acting by virtue of

the powers thereby vested in him, assumed to make another selection on October 29, 1891, of the land in suit, together with other lands within the indemnity limits of the grant, claiming and alleging that all thereof was then vacant and unappropriated, which selection was in due form and in full compliance with the rules of the Land Department. This selection was duly certified and approved by the Secretary of the Interior on March 29, 1897, and whatever title was acquired by such selection to the land in question was acquired by and vested in Russell Sage as assignee in trust of the Railway Company. He never acquired any other right to the land by virtue of any other selection. At the time this selection and approval were made, the land was not vacant, but was then, and has been since 1888, actually occupied by the defendant and his family, claiming it as a homestead.

7. The plaintiff acquired, and there was vested in her, and she is now the owner of, whatever right and title Sage, as assignee in trust, had or at any time held in and to the premises in question; but whatever right she thus acquired was acquired with notice of the defendant's claim of right to hold the land under the homestead laws, and that he asserted a right to the title thereof, as against all persons claiming under the land grant.

8. In the year 1883, the defendant duly declared his intention to become a citizen of the United States, and was after that date in all respects qualified and entitled to make homestead entry under the laws of the United States, and on the seventeenth day of December, 1885, he offered at the proper land office a homestead entry in due form for the land, and tendered the requisite fees, all of which was refused by the officers of the local land office, because the tract applied for was within the indemnity limits of the St. Paul & Pacific, as well as within the indemnity limits of the Railway Company's land grants, and had been withdrawn from settlement, and because of an attempted selection made by it which was then pending on appeal, and because the defendant did not show settlement and residence on the land prior to the said selection, from which decision the defendant did not appeal.

9. On June 11, 1887, the defendant became a duly naturalized

citizen of the United States. After the decision of the land office rejecting his proposed entry had become final, and in the early part of the year 1888, the defendant for the first time entered and settled upon the land, and erected thereon a dwelling house, and broke up fifteen acres of the land, and from thence until now he has continued to reside on the land, and has made his home there, and made improvements thereon of the value of $2,000. His residence and improvements were at all times sufficient to comply with the Federal homestead laws.

10. The defendant, on January 15, 1904, and for the first time since he made settlement upon the land, tendered his homestead application to the proper office for the land, which was rejected by the local officers, on the ground that a selection of the tract had been approved to the Railway Company. He appealed to the Commissioner of the General Land Office, who affirmed the decision. Thereupon he appealed to the Secretary of the Interior, who, on October 17, 1905, affirmed the decision, substantially on the ground that the defendant was guilty of laches, and denied him a hearing in proof of his allegations of settlement and residence on the land.

The conclusion of law based upon the facts stated was a direction for judgment in plaintiff's favor, that she was the owner of the land and entitled to the possession thereof. The record contains no settled case, and the sole question is whether the conclusion of law is sustained by the facts found.

1. The first contention of defendant to be considered is that Sage, as trustee, had no authority to make the selection in 1891, or at any other time after three years from the entry of the judgment in this court forfeiting its franchises. All the rights of the Railway Company in the land were transferred by it to Sage before the expiration of the three years after its dissolution, and vested in him the right to make selection of indemnity lands as the Railway Company would have had if it had not been dissolved. The question is not an open

one, it having been determined adversely to the contention of the defendant. Sage v. Crowley, 83 Minn. 314, 86 N. W. 409; Norton v. Frederick, 107 Minn. 36, 119 N. W. 492.

2. It is further urged by defendant that, as neither the plaintiff nor her predecessors in interest have had possession of the land within fifteen years next before the commencement of the action, she cannot maintain it. The claim is without merit, for the legal title to real property carries with it the right of possession, which is sufficient under section 4073, R. L. 1905, to recover possession thereof from one in possession without right or title. Norton v. Frederick, supra.

3. The only other claim of the defendant is to the effect that he was in the actual possession of the land, with intent to claim it as a homestead, on October 29, 1891, when the Sage selection was initiated, and by virtue of such possession his homestead rights had attached; hence the land had then ceased to be public land, and could not be selected as indemnity land. The cases of Sjoli v. Dreschel, 199 U. S. 564, 26 Sup. Ct. 154, 50 L. ed. 311, and Osborn v. Froyseth, 216 U. S. 571, 30 Sup. Ct. 420, 54 L. ed. 619, are relied upon in support of the claim. The same claim was made and the same cases cited by the defendant to this court on the former appeal in the instant case; but it was held, evidently in view of later decisions of the Federal Supreme Court, that the defendant could not prevail upon the strength of his settlement upon the land unaccompanied with efforts to acquire title under the homestead laws. The controlling facts in this case are that, while the defendant entered into possession of the land in 1888, his first tender of a homestead application was more than twelve years after a valid selection of the land had been made on October 29, 1891, and approved as of that date under the doctrine of relation, and that the defendant was guilty of laches, as was held on his appeal to the Secretary of the Interior. Weyerhaeuser v. Hoyt, 219 U. S. 380, 31 Sup. Ct. 300, 55 L. ed. 258; Northern Pacific Ry. Co. v. Wass, 219 U. S. 426, 31 Sup. Ct. 321, 55 L. ed. 280.

We accordingly hold that the facts found by the trial court support its conclusion of law and the judgment in favor of the plaintiff.

Judgment affirmed.