# WILLIAM R. KINYON and Others v. TORGER CHRISTIANSON.[1]

January 24, 1913.

Nos. 17,778—(143).

**Land grant — cases followed.**

> In an action involving title to a tract of land within the indemnity limits of the land grant to the Hastings & Dakota Railway Company, the controversy being between a settler upon the land under the claim of homestead rights, and the successor in interest of the railroad company, it is *held* that the facts present a case substantially similar to Osborn v. Froyseth, 105 Minn. 16, and Osborn v. Froyseth, 216 U. S. 571, and the decisions there rendered are followed and applied.

Action of ejectment in the district court for Chippewa county in which William R. Kinyon, George R. Kinyon and Thomas H. Kelly, as trustees under the last will of William H. Kelly, deceased, were substituted as plaintiffs. The facts are stated in the opinion.

The answer, among other matters, alleged that during the year 1888 defendant settled upon the land with intent to make entry thereon and to claim it as homestead under the United States homestead laws, being advised that whatever claim to said land had existed in favor of the Hastings & Dakota Railway Company was or would be entirely extinguished; that he constructed thereon a house, barn and other buildings, and has resided thereon with his family without interruption since; that in December, 1891, he offered a homestead application of the land in due form of law at the proper land office, with tender of all necessary fees, but the same was disallowed on the pretended claim that it had been selected as indemnity land by the railway company; that the pretended selection was void and the rejection of his homestead application was erroneous; and prayed

---

[1] Reported in 139 N. W. 597.

that the pretended title of plaintiffs be annulled and defendant's title be quieted and confirmed against the claims of plaintiffs.

The reply, among other matters, alleged that the exact issues involved in the action were involved in an action prosecuted by the defendant in the United States land office and Department of the Interior to obtain allowance of his application to enter the land as a homestead, which was contested by Russell Sage, grantor of plaintiffs' testator; that the application was made in 1891, rejected by the commissioner of the land office in September, 1894, on the ground that defendant did not allege settlement prior to the company's selection; that notice of the decision was served upon defendant in October, 1894, no appeal was ever taken by him, and the case was closed adversely to defendant in February, 1895; that by such adjudication the matters and facts litigated in this action were finally determined on the merits, and defendant was barred thereby from maintaining the defense interposed by his answer. The reply also alleged that the ground of relief set out in the answer did not accrue within six years after the commencement of this action nor within six years before the time it was set forth in the answer and was barred by the statutes of limitations.

The case was tried before Qvale, J., who made findings and ordered judgment that plaintiffs were not entitled to any relief. From the judgment entered pursuant to the order, plaintiffs appealed. Affirmed.

*Owen Morris,* for appellants.

*C. A. Fosnes* and *Alfred K. Fosnes,* for respondent.

BROWN, C. J.

The land in controversy in this action was located within the indemnity limits of the land grant to the Hastings & Dakota Railway Company, as granted and fixed by the act of Congress of July 4, 1866, and was in 1883 selected by that company, with other lands in the same limits, to supply lands lost within the place limits of the grant. This selection was held by the Interior Department of the

general government not in compliance with the regulations controlling such selections, and it was rejected on October 23, 1891. Prior to that date, all land within the indemnity limits of this grant had been withdrawn from entry under the homestead and pre-emption laws. But by the order rejecting the selection made by the railroad company, just referred to, the land was thrown open to settlement "by the first legal applicant under the public land laws" of the United States. That order was issued on October 23, 1891.

Defendant, a naturalized citizen of the United States, and a qualified homesteader, settled upon the land in the year 1888, and has since continuously resided thereon with his family, making extensive improvements in the construction of buildings upon and otherwise improving the land for agricultural purposes. The land was not open to entry at the time of this settlement, but defendant's intention and purpose was to claim the same under the homestead laws whenever it should be subject to entry thereunder. It became so subject to entry on the date of the order of the Interior Department rejecting the railroad company's selection thereof as heretofore stated; and in December, 1891, defendant duly filed an application to enter the same under the homestead laws. His application was rejected on the ground that it had been preceded by a second selection on behalf of the railway company, which selection was made on October 29, 1891, about six days after the rejection of the former selection. The second selection was made by Russell Sage, trustee, successor to the rights of the railway company, and was formally approved by the Land Department, and the land certified to the state for the benefit of the railway company on March 29, 1897.

Plaintiffs have succeeded to the rights of the company and of Sage, to whom the land was transferred by the company in trust for the benefit of stockholders. They brought this action to recover possession of the land, basing their claim of title upon the approval of the second railway selection and certification of the land thereunder by the Interior Department. Defendant relies upon his settlement upon the land under the homestead laws, his continued residence thereon,

120 M.—22.

and cultivation and improvement of the same, together with his application to enter the land as a homestead, all of which he insists vests in him rights paramount and superior to any claim of plaintiffs.

This statement of the case is deemed sufficient to an understanding of the present decision. A more detailed statement will be found in Osborn v. Froyseth, 216 U. S. 571, 30 Sup. Ct. 420, 54 L. ed. 619, a case involving the same land grant, and a controversy substantially identical with that at bar.

The trial court held that the rights of defendant were superior to those of plaintiffs, and ordered judgment accordingly. Judgment was so entered, and plaintiffs appealed.

We are unable to distinguish the case from the facts presented in the Froyseth case above referred to, also reported in 105 Minn. 16, 119 N. W. 1113, and we follow and apply the decision there rendered. Every question involved in the case at bar was there presented and disposed of adversely to plaintiffs' contention.

It appeared in that case that subsequent to the first selection by the railroad company, but long before the second selection, defendant in that action settled upon the land with the bona fide intention of claiming the same under the homestead laws. After the land had been thrown open to settlement by the order of the department rejecting the railroad selection of 1883, defendant made application to enter the land as a homestead. That application was made, as in the case at bar, after the second selection by the railroad company, but before the approval thereof. The Supreme Court, speaking through Mr. Justice Lurton, held that defendant's settlement upon the land under the facts stated was the initiation of proceedings to acquire the land under the homestead laws, and that the land was not subject to appropriation by the railroad company as indemnity land at the time of its second selection. That precise situation is presented in the case at bar.

The further claim of plaintiffs in this case, namely, that the second selection was merely an amendment or correction of the first, and therefore that plaintiffs' rights relate back to the date of the first se-

lection, was also decided adversely to plaintiffs in the Froyseth case. The court there said [at page 577] that "the rejection by the Secretary of the Interior of the selection made in 1883 is fatal to any claim now made to carry back the title of plaintiff in error to that selection." Nor is it important that defendant's application to enter the land as a homestead did not disclose a settlement upon the same prior to the second railroad selection. This point is fully covered by the opinion of the court in that case.

The further suggestion here made that defendant's application was defective and insufficient is not well taken. The plaintiffs' reply admits the application to file on the land, and, moreover, the application was accepted by the department as sufficient, and it was rejected on its merits.

This embraces all that is necessary to say in the case. The Froyseth case covers all questions presented, and, as we understand, has not been overruled or departed from by the Federal court. Weyerhaeuser v. Hoyt, 219 U. S. 380, 31 Sup. Ct. 300, 55 L. ed. 258, and Northern Pacific Ry. Co. v. Wass, 219 U. S. 426, 31 Sup. Ct. 321, 55 L. ed. 280, are clearly distinguishable from the Froyseth case. In those cases it appeared that, though defendant settled upon the land prior to the second selection by the railroad company, he made no effort to perfect his homestead rights, by filing a homestead application or otherwise, until long after the selection had been approved and the title certified to the railroad company. This fact differentiates the cases. Morris v. Svor, 118 Minn. 344, 136 N. W. 852; Morris v. Svor, 114 Minn. 303, 131 N. W. 324.

Judgment affirmed.