## SJOLI v. DRESCHEL.

### ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 79. Submitted November 27, 1905.—Decided December 18, 1905.

1. The Northern Pacific Railroad Company could not acquire a vested interest in particular lands, within or without place limits, merely by filing a map of general route and having the same approved by the Secretary of the Interior, although upon the definite location of its line of road and the filing and acceptance of a map thereof in the office of the Commissioner of the General Land Office, the lands within primary or place limits, not theretofore reserved, sold, granted or otherwise disposed of and free from preëmption or other claims or rights, become segregated from the public domain, and no rights in such place lands will attach in favor of any settler or occupant, after definite location.
2. No rights to lands within indemnity limits will attach in favor of the railroad company until after selections made by it with the approval of the Secretary of the Interior.
3. Up to the time such approval is given, lands within indemnity limits, although embraced by the company's list of selections, are subject to be disposed of by the United States or to be settled upon and occupied under the preëmption and homestead laws of the United States.
4. The Secretary of the Interior has no authority to withdraw from sale or settlement lands within the indemnity limits which have not been previously selected, with his approval, to supply deficiencies within the place limits of the company's road.

THE facts are stated in the opinion.

*Mr. Moses E. Clapp* for plaintiff in error.

*Mr. W. E. Hale* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This case was tried upon a stipulation of facts. It involves the title to the northeast quarter of the southeast quarter of section five, township one hundred and thirty-three north, of range forty-two, west of the fifth principal meridian, Minnesota, which is situated opposite to and coterminous with a part of the line of the Northern Pacific Railroad as definitely located on the twenty-first day of November, 1871, and is within the first indemnity limits of the grant of public lands made by the act of Congress of July 2, 1864, in aid of the construction by the Northern Pacific Railroad Company of a railroad and telegraph line from Lake Superior to Puget Sound, on the Pacific Coast. 13 Stat. 365, c. 217.

The state court adjudged that plaintiff Sjoli was not entitled to the land and that the defendant Dreschel, who asserts title under the railroad company, was the owner.

From the numerous cases in this court relating to the above act of July 2, 1864, the following propositions are to be deduced:

That the railroad company will not acquire a vested interest in particular lands, within or without place limits, merely by filing a map of *general* route and having the same approved by the Secretary of the Interior, although upon the *definite location* of its line of road and the filing and acceptance of a map thereof in the office of the Commissioner of the General Land Office, the lands within primary or place limits, not theretofore reserved, sold, granted or otherwise disposed of and free from preëmption or other claims or rights, become segregated from the public domain, and no rights in such place lands will attach in favor of a settler or occupant, who becomes such after definite location;

That no rights to lands within indemnity limits will attach in favor of the railroad company until after selections made by it with the approval of the Secretary of the Interior;

That up to the time such approval is given, lands within indemnity limits, although embraced by the company's list of selections, are subject to be disposed of by the United States or to be settled upon and occupied under the preëmption and homestead laws of the United States; and,

. That the Secretary of the Interior has no authority to withdraw from sale or settlement lands that are within indemnity limits which have not been previously selected, with his approval, to supply deficiencies within the place limits of the company's road.[1]

These principles, it would seem, make it easy to determine the present case, the controlling facts in which are undisputed. Let us see.

The plaintiff Sjoli, a qualified entryman, settled upon the land in dispute in 1884, with the intention in good faith to perfect his title under the homestead laws. He grubbed and broke about two and one-half acres, built a house and stable thereon, and moved into the house with his family on the fourth day of October, 1884. He has lived upon the premises continuously with his family ever since that time. At the time of the bringing of this action he had broken about twenty-two acres, constructed 220 rods of fencing, and made improvements of the value of $500. In 1889 he applied at the proper local land office to make entry of this land under the homestead laws. That

---

[1] *Hewitt* v. *Schultz,* 180 U. S. 139; *Nelson* v. *Northern Pacific Railway,* 188 U. S. 108; *United States* v. *Northern Pacific Railroad Co.,* 152 U. S. 284, 296; *Northern Pacific Railroad* v. *Sanders,* 166 U. S. 620, 634, 635; *Menotti* v. *Dillon,* 167 U. S. 703; *United States* v. *Oregon & California Railroad,* 176 U. S. 28, 42; *St. Paul Railroad* v. *Northern Pacific Railroad,* 139 U. S. 1, 5; *St. Paul, Sioux City &c. Railroad* v. *Winona &c. Railroad,* 112 U. S. 720, 726; *M., K. & T. Ry. Co.* v. *Kansas Pacific Ry.,* 97 U. S. 491, 501; *Cedar Rapids & M. R. R. Co.* v. *Herring,* 110 U. S. 27; *Grinnell* v. *Railroad Co.,* 103 U. S. 739; *Kansas Pacific R. R. Co.* v. *Atchison, Topeka & Santa Fé,* 112 U. S. 414; *Wilcox* v. *Eastern Oregon Land Co.,* 176 U. S. 51; *Northern Pacific Railroad* v. *Miller,* 7 L. D. 100; *Northern Pacific R. R.* v. *Davis,* 19 L. D. 87, 90; *Spicer* v. *Northern Pacific R. R. Co.,* 10 L. D. 440, 443; *Northern Pacific R. R. Co.* v. *McCrimmon,* 12 L. D. 554; *Northern Pacific R. R. Co.* v. *Plumb,* 16 L. D. 80.

application was rejected because the land was then erroneously supposed to be within the granted limits of the St. Paul, Minneapolis and Manitoba Railroad Company. No appeal from that order seems to have been taken. But Sjoli did not abandon the land or his claim upon it; for, in 1895 and relying upon his settlement of 1884, he again applied at the proper land office to enter the land under the homestead laws. His application was resisted by the Northern Pacific Railroad Company, and upon a hearing before the local land office as between him and that company, in March, 1895, the case was decided in his favor. Subsequently, Sjoli having made his final proofs as required by the homestead laws, a patent was issued to him under date of June 18, 1901. His title rests upon that patent.

Dreschel's claim to the land arises out of a contract made by him April 21, 1900, with the Northern Pacific Railway Company, by which that corporation agreed to sell to him the land in question. The parties agree that that company succeeded to whatever rights belonged to the Northern Pacific Railroad Company.

If the railway company was not entitled to the land as between it and Sjoli—if it had no interest to sell—then the defendant Dreschel has no claim as between himself and the plaintiff.

We have seen that Sjoli's settlement upon the land was in 1884, and his original application to enter it was in 1889; whereas, the railroad company made and filed its list of selections of lands within indemnity limits to supply alleged deficiencies in place limits in 1885, Sjoli being still in occupancy of the land. But, as already stated, the result of the cases in this court is that the railroad company did not acquire an interest in any particular lands within the indemnity limits merely by filing its lists of selections nor until its selections were approved by the Secretary of the Interior.

In *Musser* v. *McRae*, 38 Minnesota, 409, 411, the Supreme Court of Minnesota had occasion to construe the act of Congress granting lands in aid of the Chicago, St. Paul, Minneapolis

and Omaha Railway Company. That act provided, among other things, that "if, when the line of railroad should be definitely fixed, the United States have sold, or rights of preëmption should have attached to any such granted sections or parts thereof, then in lieu thereof, any agent to be appointed by the Governor might select, subject to the approval of the Secretary of the Interior, from the lands of the United States . . . so much land . . . as should be equal to those sold or preempted," etc. Chief Justice Gilfillan, speaking for that court, said: "As to the lands in place, the title attached upon the definite location of the line of road. As soon as that was done, the acts pointed out the lands. As to those to be taken for deficiencies, it was necessary that something more than fixing the line of the road should be done; it was necessary that there should be a selection, and an approval of such selection by the Secretary of the Interior. Until that was done the title granted did not attach to any lands outside of the 10-section [place] limit." In the later case of *Resser* v. *Carney,* 52 Minnesota, 397, 401, referring to the grant of 1864 to the Northern Pacific Railroad Company, the same court said: "The selection of indemnity lands, which was to be made 'under the direction of the Secretary of the Interior,' (13 Stat. p. 367, § 3,) did not become effectual, nor did the title pass from the United States, at least until the selection was approved, or in some way sanctioned by the Secretary of the Interior," etc. These cases are in accord with the decisions of this court above cited.

Now, it is stipulated in this case that the Secretary of the Interior has never approved the selection by the railroad company of the land here in question to supply deficiencies in place limits. So that when Sjoli settled upon the land it was, so far as the railroad company was concerned, part of the unappropriated public lands open to settlement under the homestead laws. The railroad company had no direct legal interest in it. The company's unapproved selections did not, therefore, stand in the way of the lands being occupied and entered under the homestead laws. The mere filing of its lists of selections of in-

demnity lands did not have the effect to exclude them from occupancy under the preëmption or homestead laws. On the contrary, notwithstanding the filing of such lists, they remained open, as before, to settlement or occupancy under those laws, until the selections were formally approved by the Secretary of the Interior and the lands withdrawn from settlement or sale. No such approval ever occurred.

It results that the patent issued to Sjoli is evidence of the better title and must prevail. His settlement upon the land, with the intention to perfect his title under the homestead laws, was not in violation of the act of 1864. On the contrary, he thereby acquired, within the meaning of the act of 1864, a claim upon the land which was perfected by the patent issued to him by the United States. The learned state court erred in not so holding and in adjudging that the Northern Pacific Railway Company acquired an interest in the land immediately upon filing its list of selections, and that the defendant in error was the owner of it. The relief asked by the plaintiff should have been granted.

*The judgment of the Supreme Court of Minnesota is reversed and the cause remanded for further proceedings not inconsistent with this opinion. Reversed.*

MR. JUSTICE BREWER did not participate in the decision of this case.