HOYT v. WEYERHAEUSER et al.

(Circuit Court of Appeals, Eighth Circuit.  April 17, 1908.)

No. 2,637.

1. PUBLIC LANDS—RAILROAD LAND GRANTS—GRANTED AND INDEMNITY LANDS —WHEN TITLE VESTS RESPECTIVELY.

The right to particular tracts of land within the place limits of a railroad grant like that to the Northern Pacific Railroad Company vests in the grantee upon the filing of the map of definite location of the railroad, approved by the proper officer of the government.

The right to particular tracts of indemnity land under such a grant vests in the company upon the approval by the Secretary of the Interior of the company's selection of them, and neither this right nor the title thereunder relates back so as to divest the rights of prior entrymen or purchasers of the land under the general land laws of the United States.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, §§ 232, 251.]

2. SAME—WITHDRAWALS AND SUSPENSIONS OF INDEMNITY LANDS UNDER NORTHERN PACIFIC GRANTS VOID BEFORE APPROVAL OF SELECTIONS.

Under the grants to the Northern Pacific Railroad Company, the Secretary of the Interior had no authority to withdraw or suspend from sale or entry lands within the indemnity limits of the grants which had not been previously selected with his approval, to supply deficiencies within the place limits of the grant, and such withdrawals and suspensions were ineffectual.

3. SAME—INDEMNITY LANDS OPEN TO ENTRY AND SALE UNTIL APPROVAL OF SELECTIONS.

Lands within the indemnity limits of these grants were open to entry and sale under the general land laws of the United States until the Secretary approved their selection by the grantee, although the lists of their selection had been duly filed with the Land Department.

4. SAME—LAND DEPARTMENT—JURISDICTION AND POWER OF DISPOSITION OF PUBLIC LANDS NOT ARBITRARY BUT SUBJECT TO LAW AND JUDICIAL CORRECTION.

The jurisdiction and power of disposition of the public lands by the Land Department of the United States is not arbitrary, unlimited, or discretionary; but it is subject to and must be exercised in accordance with the laws of the land, and any violation or disregard of them by the Land Department is remediable in the courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 301.]

**5. SAME—PATENT TO LAND—COURTS MAY CHARGE TITLE UNDER WITH TRUST FOR RIGHTFUL CLAIMANT.**

Whenever the officers of the Land Department have been induced by erroneous views of the law, by fraud, or by clear mistake of fact, to issue a patent to the wrong party, a court of equity, at the suit of the rightful claimant, may avoid the decision, charge the legal title under the patent with a trust in his favor, and execute the trust.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 301.]

**6. SAME—INDEMNITY LANDS—SELECTION AGAINST ENTRY—FACTS—CONCLUSIONS.**

The land in question was within indemnity limits under the grants to the Northern Pacific Railroad Company (Act July 2, 1864, 13 Stat. 365, c. 217; Joint Resolution No. 67, May 31, 1870, 16 Stat. 378), and the Secretary had withdrawn and suspended it from entry and sale. The company had filed its selection of this land, but the Secretary had not approved it. Thereupon Jones entered and paid for it under the timber and stone acts, Act June 3, 1878, c. 151, § 1, 20 Stat. 89 (U. S. Comp. St. 1901, p. 1545), and Act Aug. 4, 1892, c. 375, § 2, 27 Stat. 348 (U. S. Comp. St. 1901, p. 1547). Thereafter the Secretary approved the railroad company's selection and issued a patent for the land to that company.

*Held*, the entire beneficial interest and the equitable right to the land vested in Jones upon his completion of his purchase, and the railroad company and its successors in interest held the title under the patent in trust for him and his grantees.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Minnesota.

Herbert H. Hoyt, pro se.
Charles W. Bunn, for appellees.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. Hoyt, the complainant below, brought a suit in equity to obtain a decree that the defendants below, who were the grantees of the patentee, the Northern Pacific Railway Company, held the title to 40 acres of land in Minnesota in trust for him. The ground of his suit was that the Land Department of the United States, by reason of errors of law into which its officers had fallen, awarded and patented this land to the railway company, when its legal duty required it to award and patent it to Jones, the grantee of the complainant. He rested his claim to relief on the established and familiar rule that if the officers of the Land Department are induced to issue a patent to the wrong party by erroneous views of the law, or by a fraudulent or gross mistake of the facts, the rightful claimant may avoid that decision and charge the legal title under the patent with a trust in his favor by a proper suit in equity. James v. Germania Iron Co., 46 C. C. A. 476, 479, 107 Fed. 597, 600, and cases there cited. At the final hearing the court below was of the opinion that the officers of the Land Department had fallen into no error of law in the consideration and disposition of this land, and it accordingly dismissed the bill, and the complainant appealed.

The claim of Jones to the title to this land arose under the timber and stone acts, Act June 3, 1878, c. 151, § 1, 20 Stat. 89 (U. S. Comp. St.

1901, p. 1545), and Act Aug. 4, 1892, c. 375, § 2, 27 Stat. 348 (U. S. Comp. St. 1901, p. 1547).

On December 17, 1897, he filed in the proper local land office his application to purchase this land under these acts, and the local land officers received that application and accepted their fees for its filing. On the same day notice of this filing and that the applicant would present his proof thereunder on March 22, 1898, was issued by the register of the local land office, and on the next day it was posted and published. The land lay coterminous with the line of the railroad between Duluth and Ashland within the second indemnity limits of the grant to the Northern Pacific Railroad Company under Act July 2, 1864, 13 Stat. 365, c. 217, and the joint resolution of May 31, 1870 (Resolution No. 67, 16 Stat. 378). The Secretary of the Interior had withdrawn it from entry and sale prior to 1894. The company had filed on October 17, 1883, with the officers of the local land office at Duluth, and they had accepted, a selection of this and other lands in bulk in lieu of lands claimed by it to have been lost within the place limits of its grant. In 1893 it rearranged this selection and specified the particular tract lost in lieu of which it claimed each tract upon this list of selected lands. On August 27, 1896, the Secretary of the Interior erroneously decided that the eastern terminus of the Northern Pacific Railroad was at Duluth. In re Northern Pac. R. Co., 23 Land Dec. Dep. Int. 204; Doherty v. Northern Pacific Ry. Co., 177 U. S. 421, 20 Sup. Ct. 677, 44 L. Ed. 830; United States v. Northern Pacific R. R. Co., 177 U. S. 435, 20 Sup. Ct. 706, 44 L. Ed. 836. On March 22, 1897, he caused the company's selections of this and other lands coterminous with the line of railroad east of Duluth to be canceled, and on or before July 17, 1897, he restored all this land to the public domain and made it subject to disposal under the timber and stone acts, the homestead and other general laws for the disposition of the public lands. In re Northern Pac. R. Co., 25 Land Dec. Dep. Int. 47; Jones v. Northern Pac. R. Co., 34 Land Dec. Dep. Int. 105. On February 28, 1898, he suspended these lands from entry pending the judicial determination of the location of the eastern terminus of the railroad, but directed that in all cases where entries had been theretofore allowed parties should be permitted to complete the same by making proof thereof, but that the issue of patents should be suspended until such judicial determination. In re Northern Pac. R. Co., 26 Land Dec. Dep. Int. 265; Id., 26 Land Dec. Dep. Int. 488. On March 22, 1898, Jones made plenary proof, and on December 10, 1898, he bought and paid for the land in question in strict accordance with the provisions of the timber and stone acts, and the receiver of the local land office issued the customary receiver's receipt to him, save that he wrote across the face of it in red ink:

"This receipt is issued under the order of the Secretary of the Interior dated February 28, 1898. subject to any claim the Northern Pacific Railroad Company may have to the lands herein described."

The Supreme Court decided that the eastern terminus of the Northern Pacific Railroad was at Ashland on April 16, 1900. On July 12, 1900, the Secretary restored to the records of the Land Department the selections made by the company of this and other lands coterminous

with the portion of the line of the railroad east of Duluth, because the courts had decided that the eastern terminus of the road was at Ashland, and directed that these selections should be "considered upon their legality otherwise and in connection with any conflicting claims." He never approved the selections by the company of this land, or of any land coterminous with the line of its railroad east of Duluth until months after Jones had entered and paid for the land which is the subject of this litigation. In 1905 he sustained a decision of the Commissioner of the General Land Office that the entry of Jones should be canceled, and he subsequently caused a patent of the land to issue to the railway company. Jones v. Northern Pac R. Co., 34 Land. Dec. Dep. Int. 105.

The complainant contends that this decision and action were induced by erroneous views of the law, in that the Secretary held: (1) That the Northern Pacific Railway Company had succeeded to the rights of the Northern Pacific Railroad Company to this land under the latter's land grant; (2) that the company had sustained a legal loss of the tract of land in lieu of which the land in controversy was selected; (3) that it could lawfully select the latter, although this tract was not on the same side of the railroad as the former and was not the nearest unappropriated land to it; (4) that the complainant was not entitled to the land by virtue of the provisions of Act July 1, 1898, 30 Stat. 620; and (5) that the entry of and payment for the land by Jones conferred upon him no equitable right to the land superior to that of the railway company. The last specification will be first considered because if it is well founded, the complainant was entitled to a decree below, although the first four specifications he urges were baseless. In the discussion of the questions here presented no distinction will be made between the railroad company and the railway company, but it will be assumed that the latter has succeeded to all the rights of the former, and the companies will be called the "Railway Company."

The claim of the railway company to this land is founded on the joint resolution of May 31, 1870, which provided that it should be entitled, under the direction of the Secretary of the Interior, to as many sections of land within 10 miles on each side of its road beyond the limits prescribed in its charter of July 2, 1864 (13 Stat. 370, c. 217), as would make up the deficiency in the lands within the place limits of its grant which was specified in the resolution. All the land granted by this resolution was indemnity land. None of it was within the place limits of the grant or what is ordinarily termed granted land. The right of a railroad company to granted land vests in the grantee on the filing of the map of definite location approved by the proper government officer. Its right to indemnity land vests on the approval of its selection by the Secretary of the Interior. The same rules of law govern the inception by this railway company of an equitable right to a particular tract of indemnity land under the resolution of 1870 that condition the inception of such a right under its charter of 1864, and the Supreme Court has adjudged that these principles control the initiation of such a right:

"That no rights to lands within indemnity limits will attach in favor of the railroad company until after selections made by it with the approval of

the Secretary of the Interior; that up to the time such approval is given, lands within indemnity limits, although embraced by the company's list of selections, are subject to be disposed of by the United States or to be settled upon and occupied under the pre-emption and homestead laws of the United States; and that the Secretary of the Interior has no authority to withdraw from sale or settlement lands that are within indemnity limits which have not been previously selected, with his approval, to supply deficiencies within the place limits of the company's road." Sjoli v. Dreschel, 199 U. S. 564, 565, 26 Sup. Ct. 154, 50 L. Ed. 311.

How can the claim of Jones be denied without a violation of these principles? No approval of any selection of this land by the railway company was ever made by the Secretary until after Jones had entered, purchased, and paid for it, and hence no right ever attached in favor of the company. The indorsement upon Jones' receiver's receipt that it was issued subject to any claim that the Northern Pacific Railroad Company might have to the land described in it was ineffective, because that company had and could have no legal or equitable claim to it against such a purchaser. Ryan v. Railroad Co., 99 U. S. 382, 388, 25 L. Ed. 305; St. Paul Railroad v. Winona Railroad, 112 U. S. 720, 731, 5 Sup. Ct. 334, 28 L. Ed. 872; Barney v. Winona, etc., R. R. Co., 117 U. S. 228, 232, 6 Sup. Ct. 654, 29 L. Ed 858; Wisconsin Railroad Co. v. Price County, 133 U. S. 496, 512, 10 Sup. Ct. 341, 33 L. Ed. 687; Oregon, etc., R. R. Co. v. United States, 189 U. S. 103, 112, 113, 23 Sup. Ct. 615, 47 L. Ed. 726; New Orleans Pacific Railway v. Parker, 143 U. S. 42, 58, 12 Sup. Ct. 364, 36 L. Ed. 66.

Upon the filing of the map of definite location from Thomson Junction to Ashland, this and other indemnity land was withdrawn from sale and entry by the Secretary of the Interior. Humbird v. Avery, 195 U. S. 480, 482, 25 Sup. Ct. 123, 49 L. Ed. 286. On or before July 17, 1897, these lands were restored to entry and sale (In re Northern Pac. R. Co., 25 Land Dec. Dep. Int. 47; Jones v. Northern Pac. R. Co., 34 Land Dec. Dep. Int. 105), and on February 28, 1898, they were suspended from entry by direction of the Secretary, except that those who, like Jones, had been allowed to enter land, were permitted to make proof and payment. But the Secretary's original withdrawal and his subsequent suspension were alike futile. He was without lawful authority to make either, and the lands always remained open to entry and sale under the timber and stone act, the homestead, the pre-emption, and the other general laws for the disposition of the public lands until each particular tract was either sold thereunder or the Secretary approved its selection by the railway company. Hewitt v. Schultz, 180 U. S. 139, 21 Sup. Ct. 309, 45 L. Ed. 463; Nelson v. Northern Pacific Railway, 188 U. S. 108, 23 Sup. Ct. 302, 47 L. Ed. 406; Oregon, etc., R. R. v. United States, 189 U. S. 103, 110, 23 Sup. Ct. 615, 47 L. Ed. 726.

Before the Secretary approved the company's selection of this land, Jones, a qualified entryman, entered, purchased, and paid for it in strict accordance with the provisions of the stone and timber act, and obtained his receiver's receipt therefor. From the moment of that purchase this land became the property of Jones, and it was no longer the land of the United States. He was the owner of the entire beneficial interest in and of the equitable title to it, and the only title remaining in

the United States was the naked legal title which it held in trust for him. Carroll v. Safford, 3 How. 441, 460, 461, 11 L. Ed. 671; Witherspoon v. Duncan, 4 Wall. 210, 218, 219, 18 L. Ed. 339; Wisconsin Railroad Co. v. Price County, 133 U. S. 496, 506, 10 Sup. Ct. 341, 33 L. Ed. 687.

Jones completed his purchase and obtained his receipt on December 10, 1898. His entry was not canceled until some time subsequent to August 30, 1905, pursuant to the decision of the Secretary of the Interior made on that day, and the patent was finally issued on October 18, 1905. The defendants purchased of the railway company on January 19, 1900, many years before Jones' entry was canceled. They were not therefore bona fide purchasers without notice, but they were purchasers from the United States through the railway company with full notice of the equitable right of Jones, and they stand in the shoes of their grantor the United States. As the United States never after December 10, 1898, had anything but the legal title to this land which it held in trust for Jones and his assigns, these defendants have nothing more.

Counsel for the defendants contends that the foregoing application of the rules of law which have been stated to the facts of this case is incorrect because the facts in Sjoli v. Dreschel, 199 U. S. 564, 26 Sup. Ct. 154, 50 L. Ed. 311, differ from those in the case at bar, in that Sjoli occupied his land as a homesteader before the railroad company filed its list of selections, and the company's selection of Sjoli's land was never approved. But the rules of law announced in Sjoli's Case were established by prior decisions of the Supreme Court, some of which have been cited, and it is those rules restated and reaffirmed in Sjoli's Case, and not the particular facts in that suit, which determine the controversy before us. Moreover, the decisive facts of the two cases are the same in legal effect. Sjoli initiated his equitable right to his land by settlement upon it in 1884, while it was withdrawn from entry and sale under the grant to the Northern Pacific Railroad Company by an order of the Secretary made in 1871 (Sjoli v. Dreschel. 90 Minn. 108, 95 N. W. 763), and the Supreme Court held that withdrawal void and disregarded it, as the law requires that the withdrawal and the suspension from entry of Jones' land before the railroad company's selection was approved by the Secretary shall be held and disregarded in the case at bar. The railroad company filed its selection of Sjoli's land in June, 1885, but it was rejected by the officers of the Land Department. Sjoli's application to enter the land upon which his patent was founded was not filed until 1895, and the Minnesota Supreme Court held that the Secretary ought to have approved the railroad company's selection, that as the company had done all in its power to secure the land its right to it was established by and dated from the filing of its selection. and that Sjoli's subsequent entry and patent gave him no right to or interest in it. But the Supreme Court held that the railroad company acquired no right to the land by filing its selection until that selection was approved by the Secretary, just as the law now requires that the selection of Jones' land, unapproved by the Secretary until after Jones entered and purchased it, shall be held to have initiated no right of the railway company thereto. The Supreme Court said:

"But, as already stated, the result of the cases in this court is that the railroad company did not acquire an interest in any particular lands within the indemnity limits merely by filing its lists of selections nor until its selections were approved by the Secretary of the Interior. * * * The company's unapproved selections did not therefore stand in the way of the lands being occupied and entered under the homestead laws. The mere filing of its lists of selections of indemnity lands did not have the effect to exclude them from occupancy under the pre-emption or homestead laws. On the contrary, notwithstanding the filing of such lists, they remained open, as before, to settlement or occupancy under those laws, until the selections were formally approved by the Secretary of the Interior and the lands withdrawn from settlement or sale. No such approval ever occurred." Sjoli v. Dreschel, 199 U. S. 564, 568, 26 Sup. Ct. 154, 156, 50 L. Ed. 311.

Counsel says that when the Supreme Court said that, "notwithstanding the filing of such lists, they remained open, as before, to settlement or occupancy under those laws, until the selections were formally approved by the Secretary of the Interior and the lands withdrawn from settlement or sale," it did not mean that the Secretary is without jurisdiction to approve a selection, because a settler under the pre-emption or homestead laws claims the land or files an application for it, but that its meaning was that in such a case the land is within the jurisdiction of the Land Department which may, if the facts warrant it, award it to the claimant under the settlement laws, and that a mere filing of a claim to such land under the latter laws does not deprive the Secretary of jurisdiction to approve the selection made by the railway company. Let that proposition be conceded. The question here is, not the jurisdiction, but the legality, of the decision of the Land Department and especially of the Secretary, its head, whereby he awarded this land to the railway company. The facts and the law warranted and require its award and sale to Jones. When he presented his application to purchase it under the timber and stone act, the railway company's selection of it was unapproved by the Secretary, and that company was without equitable right to it. The Land Department had jurisdiction to accept the application of Jones and to sell the land to him, or to approve the selection of the company and to award the land to it. It exercised this jurisdiction, accepted the application of Jones, permitted him to enter the land, to prove up his claim to it, sold it to him, took his $100 in payment for it, and issued to him his receiver's receipt, and did all this before the selection of the company was approved and before the company could acquire any right to the land. Jones' equitable title to the tract had then vested, and, while the jurisdiction of the Land Department continued until the patent issued, its power was neither arbitrary, unlimited, nor discretionary, and its action was subject to judicial correction for error of law, fraud, or clear mistake. The jurisdiction and power of disposition which the Land Department has of the lands of the United States, like the power of every other department of the government, is subject to the laws of the land, and the Land Department's violation or disregard of them is remediable in the courts. Its power "cannot be exercised so as to deprive any person of land lawfully entered and paid for. By such entry and payment the purchaser secures a vested interest in the property and a right to a patent therefor, and can no more be deprived of it by order of the commissioner than he can be deprived by such order of

any other lawfully acquired property. Any attempted deprivation in that way will be corrected whenever the matter is presented so that the judiciary can act upon it." Cornelius v. Kessel, 128 U. S. 456, 461, 9 Sup. Ct. 122, 32 L. Ed. 482; Germania Iron Co. v. James, 89 Fed. 811, 818, 32 C. C. A. 348, 354, 355; James v. Germania Iron Co., 46 C. C. A. 176, 181, 107 Fed. 597, 602; Black v. Jackson, 177 U. S. 349, 357, 20 Sup. Ct. 648, 44 L. Ed. 801; Orchard v. Alexander, 157 U. S. 372, 383, 15 Sup. Ct. 635, 39 L. Ed. 737; Brown v. Hitchcock, 173 U. S. 473, 478, 19 Sup. Ct. 485, 43 L. Ed. 772.

There is nothing in the opinion in Humbird v. Avery, 195 U. S. 480, 25 Sup. Ct. 123, 49 L. Ed. 286, inconsistent with the views which have been expressed. The Supreme Court held in that case that the lands there in controversy were subject to the provisions of Act July 1, 1898, 30 Stat. 597, 620, c. 546, and were still within the power of the Land Department, which had not then finally decided the questions properly before it concerning them, and hence that the suit was premature. Counsel for the defendants asserts, and the fact is conceded, that the land here in question is not subject to the act of 1898, and the Land Department had finally decided all questions regarding this tract that were before it and had issued a patent for it before this bill was exhibited.

Attention is called to an opinion of the Attorney General (25 Opinions of the Attorneys General, 632), in which may be found an intimation that the title of a railroad company, upon an approval by the Secretary after a sale of a tract of land to a purchaser under the general land laws, of its selection of it filed before such sale, relates back to the date of the grant and divests the right of the purchaser to the land. No other authority in support of that theory has been discovered. The decisions of the Supreme Court limit the right and title to indemnity land to the date of the approval of the selection, and, even if the theory could be sustained, its effect would be limited to lawful approvals, and the approval of the selection of this tract was illegal because the tract was not the property of the United States and was not open to selection by the company at the time of the approval.

Finally, counsel invokes the familiar rule that the decisions of officers of other departments of the government upon questions within their jurisdiction are cogent and persuasive and should be followed by the courts, unless they are clearly erroneous, and he reminds us that the Secretary of the Interior and the Commissioner of the General Land Office have carefully considered the questions in this case and have decided that Jones was without legal or equitable claim to this land, and that the right of the railway company to it was superior. But Jones was a qualified entryman. The attempted withdrawals and selections of the land by the Secretary prior to his approval of the company's selection were unauthorized by law and without legal effect. The land was open to entry and purchase until he approved the selection. Jones entered, bought, and paid for it before any such approval was made. And the decisions of the Supreme Court which have been cited leave no doubt that the Secretary and the Commissioner fell into a plain error of law when they took the land which Jones had lawfully purchased from him or from his grantees and gave it to the

railway company. Erroneous decisions of questions of law by the officers of the Land Department cannot be permitted to deprive the equitable owner of his vested right to lands which he has lawfully purchased from the United States. Johnson v. Towsley, 13 Wall. 72, 80, 20 L. Ed. 485; Gibson v. Chouteau, 13 Wall. 92, 102, 20 L. Ed. 534; Shepley v. Cowan, 91 U. S. 330, 340, 23 L. Ed. 424; Moore v. Robbins, 96 U. S. 530, 536, 24 L. Ed. 848; St. Paul R. R. Co. v. Winona Railroad, 112 U. S. 720, 733, 5 Sup. Ct. 334, 28 L. Ed. 872.

The conclusion is that by his entry and purchase Jones acquired the entire beneficial ownership and the equitable right to the land in controversy, and that the railway company and its successors in interest obtained nothing under the patent but the naked legal title, which they held in trust for him and for his successors in interest.

This conclusion renders the other questions presented in this case immaterial.

The decree must accordingly be reversed, and the case must be remanded to the court below, with directions to enter a decree for the complainant for the relief prayed in the bill.

It is so ordered.