NORTHERN PACIFIC RAILWAY COMPANY v. FRED WASS and Another.[1]

June 12, 1908.

Nos. 15,625—(160).

**Land Grant—Entry on Indemnity Land.**

On the authority of Sjoli v. Dreschel, 199 U. S. 564, and Hoyt v. Weyerhaeuser (filed April 17, 1908, by the United States Circuit Court of Appeals, Eighth Circuit), *held*, under the provisions of the acts of Congress approved March 3, 1857, and March 3, 1865, as amended by the act approved March 3, 1871, that until the secretary of the interior approves of the list filed by the railroad company, designating indemnity lands,

[1] Reported in 116 N. W. 937.

such lands are not segregated from the public domain, and are subject to entry under the homestead laws, although the list may have been filed prior to the date of settlement on the land by the homesteader.

Action in ejectment in the district court for Todd county to recover possession of a quarter section of land. From an order, Taylor, J., overruling plaintiff's demurrer to defendants' answer, it appealed. Affirmed.

*Charles W. Bunn*, for appellant.

*P. B. Gorman*, for respondents.

LEWIS, J.

Action in ejectment by appellant to recover possession of a quarter section of land in Todd county. Appellant claims title under the acts of congress approved March 3, 1857 (11 St. 195, c. 99), and March 3, 1865 (13 St. 526, c. 105), as amended by the act approved March 3, 1871 (16 St. 588, c. 144). These acts contain what are known as the "Northern Pacific land grants." Respondents claim right of possession under and by virtue of a settlement under the United States homestead laws, and appellant relied upon its patent title. Appellant demurred to respondents' answer upon the ground that it did not state facts sufficient to constitute a counterclaim, and appealed from an order of the trial court overruling the same.

The facts as presented by the answer are as follows: The land is within the indemnity limits of the grant referred to. A list of lands, including the tract in question and purporting to be a list of selections under the indemnity provision, was filed December 31, 1877. An amended selection list, including the tract involved, was filed December 4, 1889. A rearranged list of indemnity selections, embracing the disputed tract, was filed in the St. Cloud land office on February 12, 1892, wherein, for the first time, was designated a proper basis for each tract so selected. In April, 1899, respondent Fred Wass, being duly qualified, made settlement on the land with the bona fide intention of entering the same under the homestead laws, and has ever since maintained such possession and resided thereon as his homestead, and has made improvements exceeding $1,200 in value, and on December 4, 1899, presented to and filed with the register and receiver of the United States land office at St. Cloud a proper and legal appli-

cation to enter such land under the homestead laws. The application was received and filed, but was rejected upon the ground that the land applied for was embraced in a then pending, though unapproved, indemnity selection of the St. Paul & Northern Pacific Railway Company. Respondent appealed to the commissioner of the general land office, and on July 10, 1903, that officer affirmed the decision of the local land officers and rejected his application upon the same ground. He appealed to the secretary of the interior, who, January 9, 1904, affirmed the decision of the commissioner on the ground stated. On February 16, 1905, the secretary of the interior for the first time approved the list of indemnity selections made by the railway company, and on March 15, 1905, patent was issued to the state of Minnesota describing the same as indemnity lands under the provisions of the aforesaid grants, and appellant succeeded to all of the right, title, and interest of the several grantees named in the several acts of congress, and the legal title vested in appellant.

The only question involved is whether the land was open to settlement under the United States homestead laws between the date of filing the proper list of selection and the date of approval thereof by the secretary of the interior. It is conceded by the demurrer that a proper list of selection was filed with the secretary of the interior on February 12, 1892; that respondent settled on the land in April, 1899, and made application to enter the land under the homestead law December 4, 1899; and that the selection was finally approved February 16, 1905.

The trial court based its decision in overruling the demurrer upon the case of Sjoli v. Dreschel, 199 U. S. 564, 26 Sup. Ct. 154, 50 L. Ed. 311, wherein the facts were as follows: The railroad company filed the map designating its definite route November 21, 1871, which map and location was approved December 26 following. On June 19, 1885, the company filed its list of selections at the proper land office, which list was rejected as to the land involved in that suit. In July, 1885, the company appealed from that decision. In 1889 Sjoli applied to the proper land office to enter the land under the homestead laws, and his application was rejected upon the ground that the land was considered to be within the indemnity limits. In January, 1895, Sjoli again made application at the land office to enter the land as a home-

stead, at which time his application was received and patent was issued to him June 18, 1901. It will be observed that the facts in the Sjoli case differ from the case now before us in the following respects: Sjoli had settled on the land prior to the filing of the list of selections, and had attempted to enter the same under the homestead law in 1889; whereas, in the case before us, respondents did not settle on the land until after the filing of the list. In the Sjoli case, at the time of the trial it did not appear that the list had ever been approved by the secretary of the interior. In the present case a list of selection was approved. In the Sjoli case a patent had issued to him, while in this case respondent's application was never allowed; but the selection of the railway company was approved and a patent issued to appellant prior to the time of the commencement of this action.

In the Sjoli case the federal supreme court laid down four general propositions:

1. That as to place lands the grant took effect upon the definite location of the railroad and the filing and acceptance of the map, and that thereby such lands became segregated from the public domain.

2. That no right to land within the indemnity limits attached in favor of the railroad company "until after selections made by it with the approval of the secretary of the interior."

3. "That up to the time such approval is given, lands within indemnity limits, although embraced by the company's list of selections, are subject to be disposed of by the United States or to be settled upon and occupied under the preëmption and homestead laws of the United States."

4. "That the secretary of the interior has no authority to withdraw from sale or settlement lands that are within indemnity limits which have not been previously selected, with his approval, to supply deficiencies within the place limits of the company's road."

In applying those propositions to the facts of the case, the court said:

"We have seen that Sjoli's settlement upon the land was in 1884, and his original application to enter it was in 1889; whereas, the railroad company made and filed its list of selections of lands within indemnity limits to supply alleged deficiencies in place limits in 1885, Sjoli being still in occupancy of the land. But, as already stated, the result of

the cases in this court is that the railroad company did not acquire an interest in any particular lands within the indemnity limits merely by filing its lists of selections nor until its selections were approved by the secretary of the interior."

Again: "So that when Sjoli settled upon the land it was, so far as the railroad company was concerned, part of the unappropriated public lands open to settlement under the homestead laws. The railroad company had no direct legal interest in it. The company's unapproved selections did not, therefore, stand in the way of the lands being occupied and entered under the homestead laws. The mere filing of its lists of selections of indemnity lands did not have the effect to exclude them from occupancy under the preëmption or homestead laws. On the contrary, notwithstanding the filing of such lists, they remained open, as before, to settlement or occupancy under those laws, until the selections were formally approved by the secretary of the interior and the lands withdrawn from settlement or sale."

Appellant has called our attention to several cases referred to in the opinion, and in the marginal note of the report, and submits that the court could not have intended to place its decision upon the specific ground that the list had not been approved, although it had been filed at the time Sjoli made settlement upon the land. Counsel argue, with great force, that the case was rightly disposed of upon the ground that settlement antedated any action by the company to cause the indemnity lands to be segregated, and that the point involved in the present case was not necessarily passed upon. In order that our position may be entirely clear, we will refer to some of the cases upon which the Sjoli decision was based:

In Hewitt v. Schultz, 180 U. S. 139, 21 Sup. Ct. 309, 45 L. Ed. 463, the court held that under the act of July 2, 1864 (13 St. 365, c. 217), the secretary of the interior had no authority to withdraw all of the lands included within the indemnity limits, and that until a valid selection was made by the grantee the lands within the indemnity limits were open to disposition by the United States. The court stated the proposition as follows: "Was it competent for the secretary of the interior, immediately upon the acceptance of the map of definite location, to include in his withdrawal from sale or entry lands within the indemnity limits?" The decision was by a divided court,

and the majority considered the question not free from doubt; but, under the circumstances, gave great weight to the opinion of the department which was charged with the execution of the statute; the secretary of the interior having delivered an opinion to the effect that the entire amount of lands within the indemnity limits could not be withdrawn.

Oregon & C. R. Co. v. U. S., 189 U. S. 103, 23 Sup. Ct. 615, 47 L. Ed. 726, was a case where the settler filed upon the land before the list of selections was filed, and the case seems to have been disposed of on that particular ground. The court say: "These principles are applicable to the present case if, as contended by the United States, the railroad company did not acquire, and could not have acquired, an interest in specific sections of land within the indemnity limits before their actual and approved selection, under the direction of the secretary prior to the date of occupancy by the respective settlers." And again: "Now, it has long been settled that while a railroad company, after its definite location, acquires an interest in the odd-numbered sections within its place or granted limits—which interest relates back to the date of the granting act—the rule is otherwise as to lands within indemnity limits. As to lands of the latter class, the company acquires no interest in any specific sections until a selection is made with the approval of the land department; and then its right relates to the date of the selection." By this language it would seem that the court did not mean that the filing of the list by the company was of no effect whatever, because it is stated that upon approval its right relates back to the date of selection; that is, the first step in making the selection—the filing of the list. The court's conclusion is specifically stated as follows (189 U. S. 115, 23 Sup. Ct. 620, 47 L. Ed. 726): "We adjudge that the rights which bona fide occupancy gave to the settler under the act of 1866 are not defeated by a mere selection afterwards of the lands by the railroad company—the settler having, after the lands are surveyed, promptly taken the necessary steps to protect his rights under the homestead laws."

The court subsequently applied the fiction of relation in U. S. v. Anderson, 194 U. S. 394, 24 Sup. Ct. 716, 48 L. Ed. 1035, and held that, although the legal title was in the United States during the time intervening between filing and approval of the list, yet the successor

in interest of the railroad company, the lands having been approved, was permitted to recover from the government the amount which it had recovered as damages from a trespasser upon the land during that intervening period.

It was held in St. Paul & Sioux City R. Co. v. Winona & St. Peter R. Co., 112 U. S. 720, 5 Sup. Ct. 334, 28 L. Ed. 872, that the railroad company acquired no vested interest in the lands within the indemnity limits by the mere filing of the map of its line of railroad, and said: "Was there a vested right in this company, during all this time, to have not only these lands, but all the other odd sections within the twenty-mile limits on each side of the line of the road, await its pleasure? Had the settlers in that populous region no right to buy of the government because the company might choose to take them, or might, after all this delay, find out that they were necessary to make up deficiencies in other quarters? How long were such lands to be withheld from market, and withdrawn from taxation, and forbidden to cultivation? It is true that in some cases the statute requires the land department to withdraw the lands within these secondary limits from market, and in others the officers do so voluntarily. This, however, is to give the company a reasonable time to ascertain their deficiencies and make their selections. It by no means implies a vested right in said company, inconsistent with the right of the government to sell, or of any other company to select, which has the same right of selection * * * in such case, and having no other right, is bound to exercise that right with reasonable diligence; and when it is exercised in accordance with the statute it becomes entitled to the lands so selected. The unascertained float then becomes a vested right to an identified tract of land." It would seem that the court recognized that the company must have reasonable time, after filing its list, to secure the approval thereof by the party designated for that purpose in the granting act.

That a vested right or interest is different from an inchoate, contingent right, or, as above stated, "a float," is apparent from a consideration of Wisconsin Cent. R. Co. v. Price County, 133 U. S. 496, 10 Sup. Ct. 341, 33 L. Ed. 687, where it was held that until the lands were formally approved by the secretary of the interior the railroad did not acquire such a vested right as made the lands subject to tax-

ation. In speaking of a similar question in U. S. v. Missouri, K. & T. Ry. Co., 141 U. S. 358, 12 Sup. Ct. 13, 35 L. Ed. 766, the court used the following language: "We say, prior to such selection and approval, because as to lands which may legally be taken for purposes of indemnity the principle is firmly established that title to them does not vest in the railroad company, for the benefit of which they are contingently granted, but, in the fullest legal sense, remains in the United States, until they are actually selected and set apart, under the direction of the secretary of the interior, specifically for indemnity purposes."

In Humbird v. Avery, 195 U. S. 480, 25 Sup. Ct. 123, 49 L. Ed. 286, the court cited from Wisconsin Cent. R. Co. v. Price County, supra, as follows: "Until the selections were approved there were no selections in fact, only preliminary proceedings taken for that purpose; and the indemnity lands * * * which might be taken as indemnity were incapable of identification; the proposed selections remained the property of the United States. The government was, indeed, under a promise to give the company indemnity lands in lieu of what might be lost by the causes mentioned. But such promise passed no title, and, until it was executed, created no legal interest which could be enforced in the courts."

Our attention has also been called to the fact that Mr. Justice Moody, when attorney general, advised the secretary of the interior that the Sjoli decision applied only to those cases wherein it appeared that the rights of the settler took effect prior to the time of the filing of the list.

We have carefully considered the cases above referred to, among others, and while it is true that the rights of a homesteader, who made settlement after the date of filing the list, was not directly presented by the facts in the Sjoli case, nor in any of the decisions upon which it was apparently based, yet the propositions of law are so clearly announced that we cannot avoid the conclusion that it was the intention of the court to decide that the railroad company acquired no rights whatever for any purpose until the approval of the list by the secretary of the interior; that it was the intention of the court to hold that the grant applied to such lands only as might be found unappropriated within the place limits upon the filing and approval of the map

designating the location of the road, and that the company was merely given an opportunity to supply the deficiency, if any, from the so-called indemnity limits; that the secretary of the interior, and not the company, should do the selecting; that, conceding the secretary was not required to act at all until the company made preliminary selection, setting off tract against tract, still, after the company had done all in its power to bring the matter before the secretary, that officer might dispose of it at his convenience; that although the secretary had reasonable time to examine into the facts and determine disputed questions, notwithstanding such contingencies and delays, the land was subject to settlement in the meantime, and the attempt of the company to secure the same was without avail. Such we understand to be the effect of the decision, and while doubtful that such granting acts as theretofore construed by that court, and by the land department, were authority for the conclusion reached, we feel compelled to accept the decision as conclusive in the case before us. We are justified in this view by the recent decision of the Circuit Court of Appeals, Eighth Circuit, in the case of Hoyt v. Weyerhaeuser, 161 Fed. 324, where that court construed the opinion in Sjoli v. Dreschel, and applied the principles there announced to a case similar to this.

Affirmed.