## NORTHERN PACIFIC RAILWAY COMPANY *v.* WASS.

### ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 181. Argued April 27, 28, 1910 —Restored to docket for reargument December 19, 1910.—Reargued January 19, 20, 1911.—Decided February 20, 1911.

Decided on authority of *Weyerhaeuser v. Hoyt, ante,* p. 380.

THE facts are stated in the opinion.

*Mr. Charles W. Bunn* and *Mr. Frank B. Kellogg*, with whom *Mr. Stiles W. Burr* was on the brief, for appellants in No. 24 and appellees in No. 12.

*Mr. Charles W. Bunn* for plaintiffs in error in No. 181.

*Mr. M. H. Stanford*, with whom *Mr. H. H. Hoyt* was on the brief, for appellees in No. 24 and appellants in No. 12.

*Mr. P. B. Gorman* for defendant in error in No. 181.[1]

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

In brief, the facts of this case are as follows: While a filed selection by the St. Paul and Northern Pacific Railway Company of land within the indemnity limits of a railroad grant was awaiting the action of the Secretary of

---

[1] This case was argued simultaneously with No. 24, *Weyerhaeuser v. Hoyt, ante*, p. 380, and No. 12, *Campbell v. Weyerhaeuser, ante*, p. 324.

the Interior, Fred Wass, in April, 1899, entered upon the land with the intention of making it a homestead, and continued in possession, making improvements, etc. In December following Wass presented to the Land Office an application to enter the tract under the homestead laws. The register and receiver filed his application, but on the same day rejected it and refused to receive the fees tendered, basing such refusal and rejection upon the ground that the lands filed for were embraced in the then pending selection. On appeal the action of the local Land Office was affirmed by the Commissioner of the General Land Office and by the Secretary of the Interior respectively. The selection was subsequently approved and a patent for the lands was issued by the governor of Minnesota, all rights under which became vested in the Northern Pacific Railway Company, the plaintiff in error. That company then commenced this action against Wass and his wife in a court of the State of Minnesota to recover possession of the land and damages for the detention. In the answer, among other things, affirmative relief was prayed against the railway company for the conveyance of the legal title to Wass. A demurrer to the answer was overruled upon the authority of the decision in *Sjoli* v. *Dreschel,* 199 U. S. 564, and a decree was entered in favor of Wass, granting the relief prayed by him. This decree was affirmed by the Supreme Court of Minnesota upon the authority of the *Sjoli* case as well as the decision of the Circuit Court of Appeals in *Hoyt* v. *Weyerhaeuser,* 161 Fed. Rep. 324. The opinion just announced, reviewing the action of the Circuit Court of Appeals in the *Hoyt case* and reversing the decree entered in that case, conclusively establishes that error was committed by the court below, and therefore requires a reversal.

*The judgment of the Supreme Court of Minnesota is therefore reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.*

MR. JUSTICE HARLAN, with whom concurred MR. JUSTICE DAY, dissenting.

This action was instituted in the District Court of Todd County, Minnesota, by the Northern Pacific Railway Company, a Wisconsin corporation, to recover the possession and damages for the detention of the southeast quarter of section thirteen, township one hundred and twenty-nine, north of range thirty-two west, situated in the above county.

The answer of the defendant Wass states certain facts both by way of defense and as the basis for an affirmative decree against the Railway Company, declaring that the legal title to the land is held in trust for his use and benefit, and should be conveyed to him. The company demurred to the answer as not stating facts sufficient to constitute either a defense or a counterclaim. The demurrer was overruled, and the case was determined on the facts stated in the answer, as well as on those set forth in a special finding. By the decree it was adjudged that the legal title was held in trust for the defendant, and the plaintiff was ordered to convey the title to him by sufficient deed. On the authority of *Sjoli* v. *Dreschel,* 199 U. S. 564, and *Hoyt* v. *Weyerhaeuser,* 116 N. W. Rep. 937 (104 Minnesota, 411), the Supreme Court of Minnesota affirmed the decree. The case is here for review.

Upon the record before us the following facts must be taken as beyond question:

1. The lands in question were surveyed public lands of the United States within the twenty mile indemnity limits of what are known as the Northern Pacific Railroad land grants made by Congress to the Territory of Minnesota by the act of March 3d, 1857, c. 99, 11 Stat. 195, and by the act of March 3d, 1865, c. 105, 13 Stat. 526, granting lands to that State, which last act was amended March 3d, 1871, 16 Stat. 588, c. 144.

2. By an act of March 1st, 1877, the legislature of Minnesota transferred all its rights in these lands to the Western Railway Company of that State. That company subsequently assigned its rights to the St. Paul and Northern Pacific Railway Company, the predecessor in interest of the present plaintiff.

3. On the thirty-first day of December 1877, the Western Railway Company filed in the proper Land Office a list purporting to contain a selection of lands under the indemnity provisions of the grants in question; not however designating any particular lands within the primary or place limits of either grant as the basis for the selected tracts. But the lands here in question were among those embraced in the above general list of selections.

4. *Nearly twelve years after the filing of the list of selections* by the Western Railway Company, namely, on December 4th, 1889, the St. Paul and Northern Pacific Railway Company filed in the local Land Office an amended list of the selection of indemnity lands, which list included the land now in dispute. And on February 12th, 1892 it filed a rearranged list of indemnity selections, and, then, for the first time, indicated the tract alleged to have been lost in primary limits, which loss it requested to be supplied by a particular tract in indemnity limits. Up to that time the Secretary of the Interior had not acted on that request nor approved any of the selection lists filed.

5. The fact may be here stated, though it is not very important, that the lands above described are also within the indemnity limits of the Northern Pacific grant made by the act of July 2d, 1864, c. 217, 13 Stat. 365, and were included in a withdrawal of indemnity lands made by the Secretary of the Interior on December 26th, 1871. But that withdrawal was revoked by the General Land Office, September 6th, 1887, and no final or approved selection of any of the described tracts was ever made under the provisions of the Northern Pacific grant.

6. In April 1899—the Secretary of the Interior not having, even at that date, approved either the original, amended or rearranged selections of indemnity lands, as shown on the company's lists theretofore filed—Wass "entered upon and took possession of and made a settlement" on the lands in question, and *thereafter maintained such possession and use of the lands as a homestead, residing continuously upon, cultivating and using them as his only home.* He also put improvements on them of the reasonable value of $1,200. All this he did with the *bona fide* intention of entering the lands under the homestead laws. The lands in their improved state exceeded $2,500 in value. Wass was qualified in all respects to become a claimant under the homestead laws of the United States. No question was made at the hearing below either as to his qualifications as a homestead claimant or as to the sufficiency of his residence on the land or of the value of his improvements.

7. On the fourth of December 1899, Wass filed with the Register and Receiver of the local Land Office an application—which was in due and legal form, and was accompanied by proofs of his qualifications and acts as a homestead claimant—to enter the said lands under the homestead laws, and tendered to the Receiver the fees and commissions lawfully chargeable upon his application. The Register and Receiver who received and filed the application rejected it, refusing to take the fees and commissions tendered "upon the sole ground that the lands applied for were embraced in a then *pending though unapproved* indemnity selection of the St. Paul and Northern Pacific Railway." This action was approved by the Commissioner of the General Land Office on the tenth of July 1903, on the ground that defendant's application "conflicted with the prior indemnity selection of the land made by the St. Paul and Northern Pacific Railway Company." The selection here referred to was manifestly the amended or

the rearranged list of indemnity selections filed by that
company on December 4, 1889.  Subsequently, on Jan-
uary 9, 1904, the Secretary of the Interior affirmed the
decision of the Commissioner of the General Land Office,
"on the ground that the indemnity selection of said lands
by the St. Paul and Northern Pacific Railway and its
predecessor, the Western Railway Company of Minne-
sota, were valid and of record prior to the date of the al-
leged settlement and filing of homestead application" by
the defendant Wass.  But he made no reference to the en-
try and settlement of Wass on the land under the home-
stead laws, *prior to the approval* of the list of selections *by
the Secretary of the Interior.*

8.  On the sixteenth of February, 1905—*nearly six years
after Wass entered and settled upon and improved these lands
as his home*—the Secretary of the Interior, for the first
time, approved the list of indemnity selections made by
the St. Paul and Northern Pacific Railway Company.

9.  On the fifteenth of March, 1905, a patent was issued
by the United States to the State for the use and benefit
of the Railway Company, the lands being described as
indemnity lands under the above grants of March 3, 1857,
March 3, 1865, and March 3, 1871.

These undisputed facts present a question of law which
the court may rightfully consider and determine.  The
doctrine is settled that facts, authoritatively found by
the Land Department in the course of its administration
of the public domain, cannot be collaterally questioned.
But yet when the legal title to lands has passed from the
United States to one party, when in equity and good con-
science, according to the facts conceded, found or estab-
lished, and when, as a matter of *law,* in view of those facts,
it ought to have gone to another, the former may be ad-
judged to hold the title in trust for the latter, true owner,
and compelled to convey to him.  *Stark* v. *Starrs,* 6 Wall.
402, 419; *Johnson* v. *Towsley,* 13 Wall. 72; *Moore* v. *Rob-*

*bins,* 96 U. S. 530; *Rector* v. *Gibbon,* 111 U. S. 291; *Bernier* v. *Bernier,* 147 U. S. 242, 247; *In re Emblen,* 161 U. S. 52; *Hedrick* v. *A., T. & S. F. R. Co.,* 167 U. S. 673.

The contention is that under the patent issued by the United States to the State for the use and benefit of the Railway Company all the original rights of the State passed to the Northern Pacific Railway Company; whereas, the defendant claims that the Land Offices and the Secretary of the Interior illegally interfered with his purpose to perfect his lawful claim originating under the homestead laws of the United States, the right to do which, he insists, belonged to him under the provisions of § 2289 and other sections of the Revised Statutes, as amended by the acts of Congress.

Upon the undisputed facts, we hold that Wass' entry and settlement upon these lands, and his application for them, with the *bona fide* intention to complete his title under the homestead laws, all occurring before the Secretary's approval of the company's list, gave him an interest and right in the particular lands in question which could not be impaired or defeated by the *subsequent* approval of the Secretary of the Interior of the list of selected lands filed by the beneficiary of the land grant, although such list was filed prior to Wass' entry, settlement and application. The pendency of the list in the Land Office was not decisive, for the reason that it had not been approved by the Secretary at the time Wass' claim was made and *attached to* the lands. The lands in question, being within indemnity limits, were open to entry, settlement and acquisition by qualified claimants under the homestead laws, after and notwithstanding the mere filing of the list of selected lands; and the rights acquired by the homesteader in the manner stated were not impaired or overridden by the Secretary's subsequent approval of such list.

For the reasons stated in the dissenting opinion in

*Weyerhaeuser* v. *Hoyt,* just decided, the judgment should be affirmed. We dissent from the opinion and judgment of the majority.