# OSBORN ET AL., TRUSTEES OF THE HASTINGS AND DAKOTA RAILWAY CO. *v.* FROYSETH.

### ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 395. Submitted January 5, 1910.—Decided March 14, 1910.

A rejection of a homestead entry on the ground that the land was not open for settlement does not defeat the entry if the Secretary had no authority to withdraw the land from settlement. *Sjoli* v. *Dreschel*, 199 U. S. 564.

In an action of ejectment by a railroad company claiming lieu lands under its grant, against a homesteader, the rule applies that the plaintiff must recover on his legal title and not upon defects in defendant's entry; the question is whether the entry was properly initiated before the selection and not whether it had actually ripened into legal title.

In a contest between a *bona fide* homesteader and one claiming under selection of lieu land the former has the better claim.

The right of a homesteader settling in good faith relates back to the date of settlement.

Where a railroad company fails to comply with the statutory requirements in order to authorize selection of lieu lands in the indemnity limits, and its selection is rejected, a subsequent selection does not relate back, but preëmption or homestead rights duly initiated before the second selection have priority.

Land that is actually occupied by a qualified entryman with intent to claim it as a homestead, ceases to be public and subject to selection as lieu land, even though there be no record evidence at the time the selection is made.

107 Minnesota, 568, affirmed.

THIS was an action of ejectment to recover the southeast quarter of section 7, township 119, range 40, in Chippewa County, Minnesota. A jury was waived and the case tried by the court, which made a finding of facts upon which judgment was entered for the defendant. Upon appeal to the Supreme Court of the State this judgment was affirmed.

107 Minnesota, 568. Thereupon, in due course, this writ of error was sued out by the original plaintiffs.

The plaintiffs claimed title under a land grant made by Congress, July 4, 1866, known as the Hastings and Dakota Railway land grant. The premises are not within the place limits of that grant, but are included within the indemnity limits of the line of railroad as located, and were withdrawn from settlement for the benefit of the grant on July 12, 1866, and again by a modified order of April 22, 1868. On May 26, 1883, the Hastings and Dakota Railway Company, for whose benefit the grant was made, and hereafter referred to as the railway company, attempted to select the land in question, together with other lands within the indemnity limits of the grant, but the selection was rejected by the local land office of the district. Upon appeal this action was affirmed by the Secretary of the Interior on October 23, 1891. This attempted selection was refused, because not made in accordance with the rules of the Department, requiring, as a condition precedent, that there should be furnished by the railroad company a list of the lands lost within place limits for which lands in lieu were selected. On July 22, 1890, under the land grant adjustment act of March 3, 1887, c. 376, 24 Stat. 556, said land grant was adjusted in the Land Department of the United States, and it was found that there existed a deficiency in the place limits of the grant of 922,182 acres, and that all of the lands within the indemnity limits applicable to cover such loss aggregated less than 100,000 acres. On May 28, 1891, pursuant to instructions from the Secretary of the Interior, the Commissioner of the General Land Office directed the officers of the proper local office that, after giving notice, they should restore to the public domain and open to settlement all the lands in the indemnity limits of said land grant, "not embracing selections heretofore made and applied for by said company."

After the final rejection, on October 23, 1891, of the original selection made in 1883, the predecessor of the plaintiff in title

made a second selection on October 29, 1891, of the land in suit, together with other lands, which last selection was in due form and in full compliance with the rules of the Department, and thereafter, through steps not necessary to be stated, the title acquired by this second selection under said grant was vested in the plaintiffs in error.

The tenth, eleventh and twelfth findings of fact are in these words:

"Tenth. At the time of said selection the land in question was not vacant, but was occupied by the defendant Peter Froyseth, as hereinafter found.

"Eleventh. Said selection was not approved by the Secretary of the Interior until 1901.

"Twelfth. That the defendant, on the 1st day of November, 1888, declared his intention to become a citizen of the United States, and was after said date in all respects qualified and entitled to make a homestead entry under the laws of the United States, and, on May 15th, 1889, he settled upon and went into possession of the land in controversy, with intent to enter upon and claim the same as a homestead, and with the view of making it his home, and has continued in possession and resided thereon ever since, and his residence and improvements were at all times sufficient to comply with the requirements of the homestead laws of the United States, and at the time of the commencement of this action such improvements exceeded in value the sum of seven hundred dollars ($700); that the defendant has never owned or occupied other real estate. That he became a full citizen of the United States on June 9, 1897, and has been such citizen ever since. On the 3d day of November, 1891, the defendant offered, at the proper land office, a homestead entry in due form for said land, which filing was refused by the local land officers solely on the ground that said land was withdrawn from settlement by the executive withdrawal of April 22d, 1868, from which refusal the defendant duly appealed, which appeal remained pending in the Land Depart-

ment until September 11th, 1894, on which date the rejection of said filing by the local land officers was affirmed: From the decision of the General Land officers the defendant appealed to the Secretary of the Interior, which appeal was pending until the 25th day of January, 1896, when the decision of the General Land Office of September 11th, 1894, was affirmed. That the defendant did all that was in his power to secure the land as his homestead."

Mr. *Aldis B. Browne* and Mr. *Alexander Britton* for plaintiff in error.

Mr. *C. A. Fosnes* for defendant in error.

Mr. JUSTICE LURTON, after making the foregoing statement of facts, delivered the opinion of the court.

The facts found show that on May 15, 1888, the defendant in error, being in every way qualified, entered upon the land in question with the intention of claiming it as a homestead, and has ever since continued in possession, residing thereon with his family, and that his improvements have at all times been such as to comply with the homestead laws and exceeded in value seven hundred dollars when this action of ejectment was started. On November 3, 1891, he offered at the proper land office a homestead entry, in due form, for said land. This was rejected. Upon appeal the decision was affirmed by the Secretary of the Interior on September 11, 1894. But the facts found in the trial court, and upon which the Supreme Court of Minnesota made its decision, show that this entry was refused by the local land office "solely on the ground that said land was withdrawn from settlement by the executive withdrawal of April 22, 1868." A rejection upon the ground stated was not authorized, for the Secretary of the Interior had no authority to withdraw from settlement lands within the indemnity limits of the grant which had not been before selected and approved by

him. *Sjöli* v. *Dreschel,* 199 U. S. 564, and cases cited. It has been insisted that although the local land office rejected the application for the reason stated, the affirmance, upon his appeal, was because his homestead application, instead of alleging that he had settled upon the land at some date prior to the selection made by the railroad company on October 29, 1891, simply alleged, that "he resides on the described land." This contention as to the grounds of the affirmance is only made out by the introduction now for the first time of the decision of the Secretary of the Interior under date of January 25, 1896. But that simply affirms the decision of the Commissioner made September 11, 1894, affirming the rejection made by the local land office, and gives no reason for the affirmance. This decision is sought to be explained by what purports to be a copy of an official communication under date of September 11, 1894, from the Commissioner to the local land register and receiver, notifying him that his rejection of a number of homestead entries, including that of Froyseth, on the indemnity lands in question, had been affirmed. Among other matters in that communication, it is stated, "that none of the applicants allege that the lands were settled upon either by themselves or others at the date of the said selections in October, 1891, by the Hastings and Dakota Company, nor do the records show that the lands were otherwise than vacant and subject to such selection at said date." If this be competent for our consideration upon this writ of error, it being no part of the record, it does not appear that the applicant was ever advised of this supposed defect in his affidavit. The local office simply advised him that its decision had been affirmed. The matter was remediable, as the fact was that his settlement was made months prior to his application affidavit. But, assuming that the application in its then form was defective, it is of no legal consequence in determining the validity of the title of the plaintiff in error. This was a plain common-law action of ejectment. The plaintiff must recover, if at all, upon the

legal title. That the defendant's application for a homestead has not yet ripened into a legal title is of no moment if the plaintiffs are unable to show a complete and superior legal title. The plain effect of the settlement made upon the land here in controversy before any valid-selection of the same land by the railroad company, under its grant, was to initiate a homestead right. That settlement and possession continued from the time it was first made, and when, in October, 1891, the Hastings and Dakota Railroad, or its successors in title, attempted to select that land as indemnity land, the land in question was in the actual occupancy of Froyseth claiming it as a homestead. It had, by such settlement, been segregated from the lands subject to selection, and in a contest between such a homesteader and those claiming under selections subsequently made of lieu lands the claim of the former is the better claim. Under the act of May 14, 1880 (ch. 89, 21 Stat. 141, § 3), the right of one, settling in good faith for the purpose of claiming a homestead, "relates back to the date of settlement." *Nelson* v. *Northern Pacific Railway*, 188 U. S. 108; *Sjoli* v. *Dreschel*, 199 U. S. 564; *St. Paul &c. R. Co.* v. *Donohue*, 210 U. S. 21. But it is urged that the original selection made May 26, 1883, was valid, and operated to vest the title as of that date in the railroad company. There is nothing peculiar in the act of July 4, 1866, which protected indemnity lands against settlement upon the filing of a map showing definite location of the railroad. The grant was one of every alternate section of land, designated by odd numbers, to the amount of five alternate sections per mile on each side of the road. Then follows the indemnity provision, in these words (July 4, 1866, c. 168, 14 Stat. 87):

"But in case it shall appear that the United States have, when the lines or route of said roads are definitely located, sold any section, or part thereof, granted as aforesaid, or that the right of preëmption or homestead settlement has attached to the same, or that the same has been reserved by the United

States for any purpose whatever, then it shall be the duty of the Secretary of the Interior to cause to be selected, for the purpose aforesaid, from the public lands of the United States, nearest to the tiers of sections above specified, so much land in alternate sections or parts of sections designated by odd numbers, as shall be equal to such lands as the United States have sold, reserved, or otherwise appropriated, or to which the right of homestead settlement or preëmption has attached, as aforesaid, which lands, thus indicated by odd numbers and sections, by the direction of the Secretary of the Interior, shall be held by," etc.

The rejection by the Secretary of the Interior of the selection made in 1883 is fatal to any claim now made to carry back the title of the plaintiff in error to that selection. The right to any land within the indemnity limits of the grant, as has been often decided, depended upon the inquiry whether deficiencies had been established within the place limits, and also whether the lands selected in place of such lost lands were at the time subject to such appropriation. Thus, if either preëmption or homestead rights had been initiated before such selection, the parcels to which such right had attached were not subject to appropriation as indemnity lands. The function of the Secretary of the Interior was therefore judicial and not ministerial. *Wisconsin Railroad Company* v. *Price County,* 133 U. S. 496, 512. In the case cited above this court said:

"Until the selections were approved there were no selections in fact, only preliminary proceedings taken for that purpose; and the indemnity lands remained unaffected in their title. Until then, the lands which might be taken as indemnity were incapable of identification; the proposed selections remained the property of the United States. The Government was, indeed, under a promise to give the company indemnity lands in lieu of what might be lost by the causes mentioned. But such promise passed no title, and, until it was executed, created no legal interest which could be enforced in the courts. The doctrine, that until selection

made no title vests in any indemnity lands, has been recognized in several decisions of this court. Thus, in *Ryan* v. *Railroad Co.*, 99 U. S. 382, 386, in considering a grant of land by Congress, in aid of the construction of a railroad similar in its general features to the one in this case, the court said: 'Under this statute, when the road was located and the maps were made, the right of the company to the odd sections first named became *ipso facto* fixed and absolute. With respect to the 'lieu lands,' as they are called, the right was only a float, and attached to no specific tracts until the selection was actually made in the manner prescribed.' And again, speaking of a deficiency in the land granted, it said: 'It was within the secondary or indemnity territory where that deficiency was to be supplied. The railroad company had not and could not have any claim to it until specially selected, as it was for that purpose.' "

In *Sjoli* v. *Dreschel*, 199 U. S. 564, 566, this court said:

"That up to the time such approval is given, lands within indemnity limits, although embraced by the company's list of selections, are subject to be disposed of by the United States or to be settled upon and occupied under the pre-emption and homestead laws of the United States."

But it is urged that the mere fact that there was no record evidence of the homestead claim when the selections of 1891 were made was enough to give efficacy to that selection and vest the legal title under the patents thereafter issued. But this is answered by what we have already said, namely, that if at that date this land was actually occupied by one qualified under the law, who had entered and settled thereon before that time, with the intent to claim it as a homestead, the land had ceased to be public land and as such subject to selection as lieu land.

We find no error in the judgment of the Supreme Court of Minnesota, and it is

*Affirmed.*

Mr. Justice Brewer did not sit in this case.