### UNITED STATES v. GREAT NORTHERN RY. CO.

(Circuit Court of Appeals, Ninth Circuit. December 2, 1918.)

No. 3165.

1. PUBLIC LANDS ⟐81(1)—RAILROAD GRANT—LAND SUBJECT TO SELECTION AS LIEU LAND.
   The right of a railroad company to select indemnity land on any public nonmineral land to which no adverse claim has attached at the time of selection does not extend to land then occupied by a qualified settler as a homestead, although the land being unsurveyed, no filing has been made.

2. PUBLIC LANDS ⟐81(3)—SUIT TO ANNUL PATENT—LIEU LANDS.
   The proviso to Act March 2, 1896, § 1 (Comp. St. 1916, § 4901), that no suit shall be brought to recover lands patented in lieu of other lands lost by the grantee through failure of the government to withdraw the same from entry, is a curative provision, and does not apply to lands patented after its enactment.

3. PUBLIC LANDS ⟐120—SUIT TO CANCEL PATENTS—PARTIES.
   The United States may maintain a suit to cancel a patent to land erroneously issued, although the beneficial interest in the land has become vested in another.

4. COURTS ⟐356—FEDERAL COURTS—APPEAL—RECORD.
   A bill of exceptions is not required on appeal in equity cases, under equity rule 75 (198 Fed. xl, 115 C. C. A. xl), but only a condensed statement of the evidence, approved by the court or judge.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit in equity by the United States against the Great Northern Railway Company. Decree for defendant, and the United States appeals. Reversed.

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Robert C. Saunders, U. S. Atty., and Ben L. Moore and Edwin H. Flick, Asst. U. S. Attys., all of Seattle, Wash.

F. V. Brown, F. G. Dorety, and R. J. Hagman, all of Seattle, Wash., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This is a suit to cancel a patent issued to the Great Northern Railway Company by the United States for the land in controversy, on the ground of alleged inadvertence and mistake of the Land Department in issuing the same. The land in question was selected in lieu of land which the St. Paul, Minneapolis & Manitoba Railway Company relinquished to the United States in pursuance of the Act of Congress of August 5, 1892, c. 382, 27 Stat. 390. The defendant is the successor in interest of the St. Paul, Minneapolis & Manitoba Railway Company. The lands subject to selection are described by the act as—

"nonmineral public lands, so classified as nonmineral at the time of actual government survey which has been or shall be made, of the United States not reserved and to which no adverse right or claim shall have attached or have been initiated at the time of the making of such selection lying within any state into or through which the railway owned by said railway company runs, to the extent of the lands so relinquished and released."

The St. Paul, Minneapolis & Manitoba Railway Company, under the act, was entitled to make selection from surveyed or unsurveyed lands; but, in case such selection was from unsurveyed lands, it was required to designate the lands with reasonable certainty, and was further required to file a new selection list describing the tracts selected according to survey within three months after the survey and plats thereof had been filed in the local land office. Selection was made by such railway company of the land in dispute May 5, 1902, and adjustment was made according to the public survey February 23, 1907; the plat of survey having been filed February 6, 1907. On April 13, 1908, patent was issued by the land office to the defendant herein as successor in interest to the St. Paul, Minneapolis & Manitoba Railway Company, and the legal title now stands in the name of the patentee.

[1] The evidence shows quite satisfactorily that one L. C. Thebo settled on the land in dispute some time prior to March, 1902, claiming it as a homestead, and continued to live there for 2 or 2½ years. Thebo was a native of Michigan, and was otherwise qualified to enter the land as a homestead. In 1904 Hugh H. Boggs settled on the same land, claiming it as a homestead, and continued to live there until August 18, 1906, when he sold his relinquishment to Edmund Magner, who entered the land at the land office as his homestead, and has continued to reside thereon and to claim and improve the same as such ever since. The record at the local land office shows that Magner entered the land February 6, 1907, alleging settlement April 18, 1904. The papers in the Magner application did not reach the General Land Office until after the issuance of the patent to the rail-

way company, and on June 1, 1909, the Commissioner rendered a decision adverse to Magner, on the ground that he did not allege settlement until August 18, 1904, which was subsequent to the railway company's selection. The action of the Commissioner was affirmed by the Department January 22, 1910. Magner was, however, notified that—

"If, as a matter of fact, the land was occupied by a settler at the time of the company's selection, an allegation to that effect, duly verified, would furnish the basis for a hearing to determine the actual status of the land at the time of its selection by the company."

The requisite papers having been filed, a hearing was ordered by the Commissioner, which was set by the local land office for January 9, 1911, and notice was given to the parties interested. The hearing resulted in a decision by the local officers favorable to Magner, and this was confirmed by the Commissioner May 12, 1911. On the same day demand was made upon the railway company for a reconveyance of the land to the government.

The basis of the suit is inadvertence and mistake on the part of the Land Department in issuing the patent to the railway company, when it is alleged that the land was at the time of the railway company's selection occupied by a qualified settler. This brings upon the record the question for consideration whether the selection was valid and should be sustained as against the claim of the settler, or in this case the claim of Magner, who has succeeded to the right of the settler. The question is not new, or one of first impression with the federal courts. Without attempting to trace the history of the judicial solution of the inquiry, it will suffice to refer to a few of the leading cases of the Supreme Court dealing with the subject.

Preliminarily, it should be stated that, both under the pre-emption law and under the homestead law, after the act of 1880, the right of the settler was initiated by settlement. St. Paul, Minn. & Man. Ry. Co. v. Donohue, 210 U. S. 21, 31, 28 Sup. Ct. 600, 52 L. Ed. 941. And it has been further held that, if either a pre-emption or homestead right had been initiated before lieu selection was made, the parcels to which the right attached were not subject to appropriation as indemnity lands. Osborn v. Froyseth, 216 U. S. 571, 577, 30 Sup. Ct. 420, 54 L. Ed. 619. The court, answering the contention that the mere fact that there was no record of the homestead claim when the lieu selections were made was enough to give efficacy to the selections, and to vest the legal title under the patent thereafter issued, said:

"If at that date this land was actually occupied by one qualified under the law, who had entered and settled thereon before that time, with the intent to claim it as a homestead, the land had ceased to be public land and as such subject to selection as lieu land."

In the Donohue Case, the court further specifically held that (quoting from the syllabus):

"Under the Land Grant Act of August 5, 1892 (27 Stat. 390, c. 382), the right of the railway company to select indemnity lands, nonmineral and not reserved, and to which no adverse right or claim had attached or been ini-

tiated, does not include land which had been entered in good faith by a homesteader at the time of the supplementary selection, and on a relinquishment being properly filed by the homesteader the land becomes open to settlement and the railway company is not entitled to the land under a selection filed prior to such relinquishment."

To the same effect is Osborn v. Froyseth, supra, wherein it is further said that:

"With respect to the 'lieu lands,' as they are called, the right was only a float, and attached to no specific tracts until the selection was actually made in the manner prescribed."

See, also, Sjoli v. Dreschel, 199 U. S. 564, 26 Sup. Ct. 154, 50 L. Ed. 311.

If, therefore, the Land Department issued the patent to the railway company, through inadvertence and mistake respecting the fact of its being entitled thereto, when in reality there was a qualified settler upon the land when selection and supplementary selection were made, the suit would lie to cancel the patent. The proof, as we have previously indicated, shows quite clearly that the land in dispute was so occupied by a qualified settler, and it follows that the railway company's selection never attached, and it was never entitled to the patent.

[2] It is, however, strenuously insisted that complainant's right of action is precluded by the Act of Congress of March 2, 1896, c. 39, § 1, 29 Stat. 42 (Comp. St. 1916, § 4901), wherein it is provided that—

"No suit shall be brought or maintained, nor shall recovery be had for lands or the value thereof, that were certified or patented in lieu of other lands covered by a grant which were lost or relinquished by the grantee in consequence of the failure of the government or its officers to withdraw the same from sale or entry."

This is a curative statute, rather than one of limitations, and, if it had prospective effect, the present case would come directly within its letter and spirit. It has been recently decided, however, by the Supreme Court, in the case of United States v. St. Paul, Minneapolis & Manitoba Railway Co., that it has no such effect. No. 75, October Term, 1917, 247 U. S. 310, 38 Sup. Ct. 525, 62 L. Ed. 1130. That case is analogous on its facts to the present case, and is, without question, controlling here. The holding of the court is that the proviso was not a bar to that suit, "brought to annul a patent applied for and issued long after its enactment." So was the patent in the suit at bar issued long after the enactment of the statute. The issuance was on April 13, 1908. It would be a work of supererogation for us to attempt to elaborate upon the exhaustive opinion of the Supreme Court, and we need but to refer to it for the reasoning upon which it is based.

[3] Some question has been made as to whether this is a suit for the benefit of Magner, or one in the right of the United States. Magner was not a party in any way, but was allowed in the course of the proceeding to appear by counsel and to adduce evidence touching settlement and occupation by himself and his predecessor. There was no intervention, however, and the suit proceeded as one by the

government only. Being the party entitled to the legal title, it had a legitimate right and was duly authorized to maintain the suit as it was instituted.

[4] The motion to strike what is termed the bill of exceptions is without merit. A statement of the evidence with the approval of the judge is all that is required in an equity cause, where an appeal is to be prosecuted. Federal Equity Rule 75 (198 Fed. xl, 115 C. C. A. xl). An approved statement of the evidence is really what was filed in the present case, and not a bill of exceptions.

The complainant being entitled to recover, the decree of the court below will be reversed, and one here entered in pursuance of the prayer of the bill.